MARTIN O. WALKER

*v.*

HUGH MARTIN.

1. EXCESSIVE DAMAGES.   Although there is no fixed criterion for assess-ing the damages in an action for a personal tort, yet they should be . so assessed as to preclude the idea that passion or prejudice controlled the jury, or their sensibilities were worked upon by unworthy appliances.

2.   In an action for malicious prosecution, it appeared the defendant had caused the arrest of the plaintiff on a charge of larceny, the latter being confined in jail· for a period of nine days, when he was discharged.   The prosecution was malicious and wholly unjustifiable.   The defendant was a man of large wealth, while the plaintiff was a poor man, who obtained his living by his labor.   On the first trial the weight of the evidence was, that the plaintiff's character was bad.   A verdict of $20,000 was considered

excessive, and the judgment was reversed. On a second trial the evidence in regard to the character of the plaintiff was conflicting, yet, while the greater number of witnesses testified to his good character, the impression was made that he was not in such position, in society or among business men, as to be greatly injured by the wrongful prosecution. On the second trial, a verdict was returned for $25,000, and a remittitur being entered for $5000, a judgment was rendered for $20,000, which was reversed upon the sole ground that the damages were outrageously excessive.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was an action on the case brought by Martin against Walker and Cutting, for malicious prosecution. A sufficient statement will be found in the opinion of the court.

Messrs. JEWETT & JACKSON, for the appellant.

Mr. GEORGE W. BRANDT, for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This action was originally brought by Martin against Walker and Cutting, and on a trial by jury, a verdict was rendered for the plaintiff for the sum of twenty thousand dollars, and judgment entered for that amount.

On appeal to this court, the judgment was reversed on the ground, chiefly, that the damages were excessive. The cause was remanded for a new trial, and, on the second trial, against Walker alone, Cutting having died in the meantime, the jury awarded the plaintiff twenty-five thousand dollars as damages. On remittitur being entered of five thousand dollars, judgment was rendered for the sum of twenty thousand dollars.

To reverse this judgment, the defendant, Walker, has appealed to this court.

The case first here is reported in 43 Ill. 508. In that case, each of the defendants was responsible, so that, in fact, the

finding amounted to no more than a verdict of ten thousand dollars against each of them.   We considered, on a full examination of the case, such damages were excessive, out of all proportion to any conceivable injury the plaintiff may have suffered, and accordingly reversed the judgment, deeming it a case eminently worthy the consideration of another jury.

The present verdict is two-fold greater than the first, inasmuch as there is but one defendant to respond to it.   If the first verdict against the two defendants was excessive, this is outrageously so, and must be set aside.   In the opinion delivered in the former case, we said, cases are numerous in which this court has exercised the power to set aside verdicts for the reason that the damages assessed were excessive, and it appeared probable, from the amount assessed, the jury had acted under the influence of prejudice or passion.   In such cases, it would be a severe reflection upon the law, and a stigma upon the trial by jury, to say that no redress could be afforded; to admit that a jury is " a chartered libertine," free to indulge their worst passions, and, through their influence, victimize every man who may be so unfortunate as to have a case before them, in which his conduct does not show to the best advantage.

We are more deeply impressed than we were before that this verdict is the result of passion and prejudice, in which the judgment of the members of the jury had no share.

We are free to admit, the conduct of the defendant throughout the whole transaction, was unjustifiable, and that malice actuated him in the proceedings instituted against the plaintiff.   Yet it must be borne in mind that many reputable business men of the city of his residence concurred in the opinion, that his character was not the best.   It is true, a larger number of the same citizens testified to the plaintiff's good character, notwithstanding which, the impression is made, that he was not in such a position, in society or among business men, as to be greatly injured by the rude course the defendant pursued toward him.   He has lost no character by the prosecution; his business, such as it may be, has not been injured

thereby. A few hundred dollars would fully compensate for all the pecuniary loss he may have suffered, yet something is undoubtedly due as atonement for the actual wrong done him by the invasion of his civil and natural rights under the forms of law. What that something shall be, is, for the most part, left to the sentiment of the jury, the law failing to furnish a rule by which it shall be measured. But while this is so, while a jury can indulge this sentiment, and give it free play in actions of this nature, they must take care their verdicts shall not bear on their face such indications of partiality, corruption or prejudice, as to compel courts, in the exercise of their powers given them for the protection of the citizen, to set them aside.

Although there is no fixed criterion for assessing the damages in such a case, yet they should be so assessed as to preclude the idea that passion or prejudice had usurped the judgment seat, or unworthy appliances worked upon their sensibilities. No impartial man can suppose, for a single moment, that there is any reasonable measure between the injury done in this case and the compensation allowed by the jury. They were undoubtedly told by the plaintiff's counsel that the plaintiff was a poor man, making a precarious living by hard labor, while the defendant was rolling in wealth, possessed of millions, and who would not feel the deprivation of the small sum of twenty, or even thirty, thousand dollars. It was by such arguments as this, doubtless, the jury were influenced, and to take from the defendant's millions a few thousand dollars, and put them in the pockets of a poor man, was an act of benevolence, and charity, and justice, which would redound to their credit. They did not, it would seem, for one moment consider the real nature of the case, or their duty in respect to it, but came, hastily, to the conclusion, as the defendant was a rich man, he ought to pay heavily for the poor man's wrong. Had it been a case between the plaintiff and his equal in social position and property, no one can believe such a verdict would have been rendered, or anything like it. But

we must not be understood as arguing that the pecuniary condition of parties should not engage the attention of juries in such a case as this. We hold, it is a fit subject for consideration. If a rich man, presuming upon his wealth, shall causelessly injure a poor man, by personal violence toward him, or by any malicious proceeding, he ought to be visited by vindictive damages, but, at the same time, they must bear some sort of proportion to the injury done, and the victim should have a good standing in society. It is not expected of a jury that, for a mere personal wrong, such as this case presents, if done to a vagrant, or to a person of but little character in community, they should award to him the same damages they would give a man whose station and respectability were unquestioned.

Witnesses of respectability differ as to the character of the plaintiff, and while it may be admitted the evidence preponderates in his favor, still the verdict is so outrageously excessive that, with all our respect for juries and their findings, this can receive no favor from us. This verdict is unprecedented in the annals of judicial proceedings. It bears upon its face the stamp of prejudice, partiality and oppression, and ought not to remain on our records.

Such verdicts as this is, outrage that sense of justice which has a lodgment in every well regulated mind, and if sustained by this court, could not but tend to increase that tide of opposition to the jury system, which is now rising and advancing in more than one State of this Union. If sustained, juries will be regarded as instruments of oppression, rather than a bulwark of our liberties. It may not be that either of the ancient ordeals, that of the Anglo-Saxon, of red-hot iron and boiling water, or that of the more chivalric Norman, by battle, will be revived, yet there is no small danger the institution will sink into contempt, to end at last in its utter overthrow. This is said in view of the material of which juries are composed in modern times, but, however composed, it is quite time they should understand they do not possess despotic power.

The maxim, " *sic jubeo, sic volo, stat voluntas pro ratione,*" has no place in jury trials. It is the maxim of the despot, whose own unbridl'd will is the law for him, and for all within his power.

For the reasons given, the judgment is reversed and the cause remanded, that a new trial may be had.

WALKER, J : The majority of the court having previously held that the amount of this verdict was excessive, and the judgment reversed for that reason, I am not inclined to dissent. The judge of the court below and the jury have disregarded the opinion of the court, and for that reason this judgment should be reversed.

*Judgment reversed.*