## CITY OF DECATUR

*v.*

## ADA FISHER.

53   407
163  314
59a   72

1. HIGHWAYS—*duty and liability of cities for safe condition of their streets.*
The authorities of a city under whose control are its streets and sidewalks,
are liable in damages for injuries occasioned by reason of the streets and
sidewalks being out of repair.

2. MEASURE OF DAMAGES—*for negligence on the part of municipal corpora-
tions.* But it has never been the doctrine of this court, or of any other, that
a municipal corporation shall be held liable for more than compensatory
damages, unless there shall be proof the injury complained of was willful,
which is scarcely possible in the case of a corporation of that description.

3. WILLFUL NEGLIGENCE—*of evidence thereof.* The mere *non-feasance*
of city authorities in respect to repairing a defective sidewalk, they having
no knowledge thereof, cannot be charged as willful negligence.

4. EXCESSIVE DAMAGES. In an action against a city to recover for inju-
ries received by the plaintiff, by reason of a defective sidewalk, it appeared
the plaintiff was a girl, about twenty years of age, who was employed as
hired help, and, as such, probably received one hundred dollars per annum.
Her injuries were not of such character as to prevent her still earning her
living by labor she was qualified to do. A verdict of $3000 was set aside
as excessive.

APPEAL from the Circuit Court of Macon county; the Hon.
ARTHUR J. GALLAGHER, Judge, presiding.

The opinion states the case.

Mr. H. CREA and Messrs. NELSON & ROBY, for the appel-
lant.

Mr. A. B. BUNN, Mr. J. M. IRWIN and Mr. F. S. MURPHY,
for the appellee.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

This was an action on the case, brought to the Macon circuit
court, by Ada Fisher against the city of Decatur, to recover

damages for an injury received by reason of a defective sidewalk therein.

A verdict was found for the plaintiff, and her damages assessed at three thousand dollars, on which judgment was rendered.

To reverse this judgment the city has appealed to this court, and makes the points that the motion for a new trial should have been allowed, because the verdict was contrary to the evidence, and because the damages were excessive. The authorities of a city, under whose control are its streets and sidewalks, have been held liable in damages for injuries received by reason of their being out of repair. This doctrine has been announced by this court, as the following cases show: *Browning* v. *The City of Springfield*, 17 Ill. 148 ; *City of Joliet* v. *Verley*, 35 Ib. 58 ; *City of Bloomington* v. *Bay*, 42 ib. 503 ; *City of Chicago* v. *Gallagher, Admx.* 44 ib. 295.

But it has never been the doctrine of this court, or of any other, that a municipal corporation shall be held liable for more than compensatory damages, unless there shall be proof the injury complained of was willful, which is scarcely possible in the case of a corporation of that description, as this court said in *City of Chicago* v. *Martin and wife*, 49 Ill. 241.

The negligence of the city authorities in this case was not so gross as to amount to willful injury—far from it. There is no proof they had any knowledge of the unsafe condition of this sidewalk, at the place where the injury occurred, and though it may be said it was their duty to know its condition, and to see that it was safe for pedestrians, yet, their non-attention to it cannot be charged as willful negligence on their part. That the place in question was not in a very dangerous condition, at the time of the injury, seems apparent from the fact that, at the very moment of its occurrence, the father and brother of the plaintiff, walking side by side, neither of them taking any special care of their footsteps, walked over it in safety ; and it is quite probable, had the plaintiff looked where she was going, instead of directing her attention to a carpenter at work upon

the building which this sidewalk fronted, she might have escaped injury. She might have seen, if she had noticed, that the south end of the plank, on which she was about to place her foot, had no support, that it had slipped from its bearing, and by stepping on it, a fall might be the consequence.

But, passing this by, as the jury have found she was using due care, we will consider the question of damages. The injury not being willful, vindictive or punitive damages are not allowable.

In estimating damages for a mere *non-feasance,* the measure should be compensatory only, and to approximate that, the character of the injury, together with the pain and suffering of the party, the expenses incurred in efforts to a cure, loss of time and elements of a kindred nature, are to be considered. The pain in this case was not shown to be very severe, for, on the day of the injury, she rode nine miles in a spring wagon, without any support to her back, and the next day rode two miles on horseback. It is true, she complained on this occasion, and she was doubtless a sufferer from the injury.

It was attempted to be shown that *prolapsus uteri* was caused by the fall, and this was the deliberate opinion of her physician, a man of but a few years' practice, while older and more experienced physicians hesitate to say that, in a virgin, as the plaintiff is presumed to have been, such a fall as she received would be likely to produce such a result.

It is in the bounds of possibility, perhaps, that such was the result, but it is not very satisfactorily established. Her mother stated, on her examination as a witness, that she had been afflicted in the same way, but at what period of her life she did not say. Might it not, then, be attributable to predisposition, as well as to this fall? We do not think the evidence established this as the consequence of the fall. But, if *prolapsus* was conclusively established, it was not shown it was incurable; on the contrary, the inference from the testimony of her mother is irresistible, that it is curable, for she says she had been afflicted herself in that way, and no medical man

testified it was incurable, but that it was curable. It may occasion annoyance for some time, and prevent her enjoying rides on horseback, or engaging in hard work, requiring an upright position.

It appears she was employed as hired help, and in that way, we presume, she obtained her living, and that is not to her discredit. As such, she probably received six or eight dollars per month, or one hundred dollars per annum. The jury gave her a sum of money, which, put at interest, would produce three hundred dollars a year, without hazard or trouble on her part, she, at the same time, not disabled from earning, by such labor as she was competent to perform, a respectable living.

Such a verdict bears upon its face evidence of partiality and prejudice, and ought not to stand. Juries seem to entertain the idea that, when a corporation is defending, the amount of damages they shall pay, even in cases not very strongly made out against them, for a mere *non-feasance*, shall be, not in proportion to the injury actually done, and not as compensation, but according to the ability of the defendants to pay. And this seems to govern juries in cases where private persons are litigating. When this appears, such verdicts are not allowed by this court, to stand. *Walker* v. *Martin*, 52 Ill. 347.

Three thousand dollars damages, in such a case as this, we do not hesitate to say, is far beyond its merits, and is so excessive as to require us to send the cause to the consideration of another jury. For that purpose, the judgment is reversed, and the cause remanded, that a new trial may be had.

*Judgment reversed.*