COLLINS v. THE CITY OF COUNCIL BLUFFS.

Damages: EXCESSIVE: CASE MODIFIED. The case of *Collins et ux.* v. *The City of Council Bluffs*, 32 Iowa, 224, modified on hearing as to the question of excessive damages (the allowance of the jury being held excessive, and reduced from $15,000 to $10,000), but adhered to in other respects. BECK, J., dissenting as to the modification. Rules respecting the allowance and reduction of damages discussed by COLE and BECK, JJ.

*Appeal from Pottawattamie Circuit Court.*

WEDNESDAY, DECEMBER 10.

AT the June term, 1871, this cause was submitted to the court. At the same term and on the 28th day of July, 1871, an opinion was filed, affirming the judgment of the district court, COLE, J., not concurring therein either as to the point respecting the rule for damages, or the amount of damages assessed by the jury. A petition for rehearing was duly filed, and thereon *procedendo* was stayed. But, by oversight of the clerk and reporter, the opinion was published in 32 Iowa, 324. The cause was reheard.

*Sapp, Lyman & Hanna* and *Reed & James* for the appellant.

*Clinton, Hart & Brewer* for the appellee.

COLE, J. — Upon the rehearing of this case the court is of the opinion (BECK, Ch. J., not concurring therein) that the amount of the verdict is excessive, and it is ordered, unless the plaintiff enter a *remittitur* of $5,000 upon the verdict and take a judgment for $10,000, that the judgment of the district court will be reversed.

Some of the reasons which lead us to this conclusion we proceed briefly to state. The casualty resulting in the injury to the plaintiff was essentially an accident, of which she was the unfortunate victim. Hundreds and perhaps thousands of other persons had passed that very place, not only without injury, but without any consciousness of peril. The city officials were not guilty of any positive wrong. Doubtless, a majority of the inhabitants of the defendant city, and of the people generally, were guilty of like negligence in allowing snow and ice to accumulate in frequented places on their own, premises, whereby them-

selves and members of their families were exposed to peril. And yet, of the numerous persons passing such places, only a very few would fall, a very small number be injured at all, and none seriously. The chances for an injury, as serious as that resulting to the plaintiff, were few indeed.

It is well settled, and such were the instructions in this case, that a municipal corporation is not liable beyond the *actual* damage caused by its negligence. That is, that no exemplary, punitive or speculative damages can be given in such case against a city. The question then is : what were the actual damages suffered by the plaintiff? The jury are not to wander into the field of speculation, nor to indulge in emotional or sympathetic estimates; but the plaintiff is to be compensated for the actual damage she has suffered. The injured plaintiff was shown to be a good housekeeper and competent to take charge of a family with boarders. In this position, upon the evidence in the case, she could earn about $300 to $350 per year. But the evidence might have authorized the jury to find that her education was such as that she could earn possibly as much as $500 or $600 per year as a teacher. These are probably, upon the testimony, the very outside figures.

This trial took place eight months after the accident; other testimony tended to show that for seven weeks the injured plaintiff was confined to her bed or room; and that she was a cripple at the time of trial, and probably would be a cripple for life. Now, if she is, by the accident, made a cripple for life, and so seriously crippled as to render it impracticable for her to do any work whatever, the sum of $10,000 put at interest at the legal and current rates in Iowa and the west generally (ten per cent) would yield really three times as much per year as the highest estimate of the value of her services in any employment she was ever engaged; and twice as much as the average price she could command in any employment

she was capable of engaging in. It would seem, in this view, that a verdict of $15,000, which sum would yield annually nearly five times as much as she ever had earned, and three times as much as she ever could earn, must be excessive, even if it does not show passion and prejudice.

The supreme court of Illinois, in an opinion prepared by the venerable Chief Justice BREESE, and concurred in by the whole court, where a young woman had received, by reason of a defective sidewalk, as in this case, an injury resulting, as her physician testified, in *prolapsus uteris*, and other serious disabilities, and suffering, though not such as to entirely disable her from work, use this language : " The jury gave her a sum of money ($3,000), which, put at interest, would produce $300 a year, without hazard or trouble on her part ; she, at the same time, not disabled from earning, by such labor as she was competent to perform, a respectable living. Such a verdict bears upon its face evidence of partiality and prejudice, and ought not to stand. Juries seem to entertain the idea that, when a corporation is defending, the amount of damages they shall pay, even in cases not very strongly made out against them, for a mere nonfeasance, shall be, not in proportion to the injury actually done, and not as compensation, but according to the ability of the defendants to pay. And this seems to govern juries in cases where private persons are litigating. When this appears, such verdicts are not allowed by this court to stand. *Walker* v. *Martin*, 52 Ill. 347. $3,000 damages, in such a case, we do not hesitate to say is far beyond its merits, and is so excessive as to require us to send the cause to the consideration of another jury. For that purpose the judgment is reversed and the cause remanded that a new trial may be had." See, also, *The City of Chicago* v. *Martin*, 49 Ill. 241. In *Chicago* v. *Langlass*, 52 id. 256, a verdict of $4,750 was set aside as excessive where the injury was permanent, and where the sickness following it and caused by it was

severe and protracted. These cases are, to our minds, very strong in support of the defendant's claim that the damages are excessive in this case. We cite them simply to show the views of that court and its course of decision upon the question.

It was well said by PARKER, B., in *Ainsworth* v. *South Eastern R. R. Co.*, 11 Jur. 660 (see the case also cited in 18 Q. B. 105): "It would be most unjust if, when an accident occurs, juries were to visit the unfortunate cause of it with the utmost amount which they think an equivalent for the mischief done. Scarcely any sum would compensate a laboring man for the loss of a limb, yet, you do not in such a case give him enough to maintain him for life." This is the true idea respecting damages in such cases where there is no malice, gross negligence, fraud or the like. The party injured by such a casualty should have compensation for the injury. Not such a speculative amount as would be equivalent for the bodily pain and mental anguish which the injured party has necessarily endured, but such a sum as would be an actual practical compensation for the *injury*. Physical pain and mental anguish can have no adequate compensation in dollars and cents. They are a part of the life, and "what shall a man give in exchange for his life" is an interrogative statement of its immeasurable and incomprehensible value. And, while physical and mental suffering caused by an injury are proper to be considered in determining the amount of damages, yet they are not to be compensated for in the ordinary meaning of that word, but they stand as lights around the injury, in the focal rays of which we see more intensely and clearly the full measure and extent of the injury itself.

There is one further thought which it may not be improper to state. Where a city is compelled to pay damages for an injury, the result of the negligence of one of its citizens or property holders, it may recover from such

citizen or owner the amount thus paid. *Chicago City* v. *Robbins*, 2 Black, 418. Under this rule the defendant herein may possibly have a right of action against the owner of the lot abutting the sidewalk where the accident occurred, and if so, the damages paid in this action would be the measure of the recovery. Id. In such case an excessive recovery here might bankrupt the owner. At all events no such recovery ought to be sanctioned, whatever may be its consequences, or whoever may have it to pay.

Unless the plaintiff shall remit as above the judgment will be

Reversed.

Cole, J., dissenting. — I did not concur in the ruling announced in the opinion first filed, nor do I concur in the conclusion of the majority to adhere to the points there ruled. Upon the question of the amount of damages my own opinion is that any amount above $5,000 is manifestly excessive ; but I agree with my associates in reducing the verdict from $15,000 to $10,000, and regret that they do not concur with me in its further reduction.

Upon the third instruction given by the court, and which is affirmed in the fourth point of the opinion originally announced, I find myself wholly unable to agree with the majority. The entire instruction as given is as follows : " 3. If the plaintiff sustained an injury as claimed in the petition, it became incumbent upon her to make use of reasonable means to effect as speedy and complete a cure as could reasonably be accomplished under all the circumstances. If the plaintiff negligently and carelessly failed to make use of the reasonable means within her power for effecting a cure, and in consequence of such neglect upon her part her injury has been enhanced, she cannot recover for the injuries occasioned by such neglect. But, if in the selection of a physician and in the use of other means for effecting a cure she used reasonable and

ordinary care, her damages should not be diminished, notwithstanding you may find that by a more skillful treatment her sufferings might have been alleviated and her condition improved."

The evidence upon which this instruction is based tended to show that the physician who was called to and did treat the plaintiff, did not use ordinary skill or care; in other words, the jury might have found from the testimony that there was malpractice by the plaintiff's physician tending to increase her sufferings and to a great extent causing her permanent lameness and physical disability. The plain meaning of the instruction is, then, that if the plaintiff used ordinary care in selecting her physician, she is entitled to full damages, although some of them may have been the result of the malpractice of her physicians. Mr. Justice DAY, now a member of this court and concurring in the opinion heretofore filed, was then on the district court bench and tried this cause and gave the foregoing and other instructions; he concurs in the foregoing statement as to the plain meaning of the instruction.

Now, I dissent *in toto* from that doctrine; I cannot concur in approving it. In my opinion it is not a proper application of the rule respecting ordinary care. The damages resulting from malpractice are too remote from the negligence causing the injury, to be considered. They are not the natural and proximate consequences of the injury, and hence, should be excluded from the estimate of damages. But further than this, the plaintiff has a cause of action against her physician for the malpractice and in which she may recover all her damages resulting therefrom. Nor is her right of action against him at all prejudiced or barred by her recovery in this action. So that plaintiff may, under the rule of the instruction, recover damages in two actions for the same injury and may have two satisfactions, while the defendant, although com-

pelled to pay damages which it never caused, yet, can have no action against the wrong-doer, to indemnify or re-imburse itself for the amount paid. I think, therefore, that the instruction is wrong in principle, and essentially unjust in its practical workings, and for the error in giving it the judgment ought to be

Reversed.

BECK, Ch. J., dissenting. — I earnestly dissent from the conclusion of my brothers interfering with the judgment in this case. In my opinion this court is not justified upon principle or precedent in requiring the plaintiff to remit any portion of the judgment. I do not deny the right of this court and the duty, in a proper case, to set aside judgments when verdicts are excessive or where it appears that the amount thereof could only have been arrived at by the jury through prejudice or passion. But in my opinion this is not a proper case for the exercise of this power. On the other hand, I deny the right and authority of this court to usurp the power of a jury and, upon the mere opinion, judgment and feelings of its judges, fix the sum in which a plaintiff may recover. It is no part of our duty to assess damages in cases of this kind. That duty the law confers upon juries. Neither do I believe that this court is any better qualified to determine what amount in a case of personal injury the plaintiff ought to recover, than are juries. Attainments in the law aid not at all in the discharge of such a duty, and I have no reason to suppose that we possess such experience in matters of this kind, or are so peculiarly endowed by nature that our judgments upon such questions are more unerring than those of jurors.

While I recognize the fact that jurors often err in their verdicts, both as to the amount allowed and as to the rights of the party recovering, I am also powerfully conscious that judges *too* are fallible and burdened with the

infirmities of human nature. To escape errors and defects in the administration of the law I would not, because those upon whom certain duties pertaining thereto are imposed sometimes err in such cases, fly for relief to others not clothed with such judicial functions. If defects in the administration of the law cannot be corrected in a legal way the hardships resulting therefrom must be endured and attributed to the imperfection of our jurisprudence and the fallibility of human nature and reason. To escape the occasional errors of jurors in assessing the amounts of their verdicts I would not authorize courts, at their discretion, to increase or diminish them.

Certain Illinois decisions are cited in the opinion of my brothers upon this branch of the case, to sustain their ruling. In my opinion they fall far short of it. A moment's consideration of the law as recognized in that State and the cases cited in this connection will demonstrate the truth of my position. The rule governing the courts of Illinois in setting aside verdicts for excessive damages was announced by TROT, J., in these words: "The amount of recovery in actions for personal injuries rests so much in the discretion of jurors, that courts will not disturb their verdicts on the ground that the damages are excessive unless it is manifest they have been governed by passion, partiality or corruption; and to draw such conclusion it is not enough that the damages in the opinion of the court are too high, or that a less amount would have been satisfaction for the injury. It must be apparent at first blush that the damages are glaringly excessive." *McNamara* v. *King*, 2 Gilm. 432.

I am not advised that this rule has been doubted, modified, or discarded by later decisions of the Illinois supreme court. The cases cited in the opinion to which I am now expressing my dissent, certainly have not that effect. Neither do they support the position of my brothers that the verdict in this case is excessive. In *Decatur* v. *Fisher*,

53 Ill. 407, a verdict of $3,000 was set aside as excessive. The plaintiff was a young girl at service upon wages of $100 per year. The following extracts from the opinion will exhibit clearly the view of the law and the facts taken by the court: "In estimating damages for *non-feasance*, the measure should be compensatory only, and to approximate that, the character of the injury, together with the pain and suffering of the party, the expenses incurred in efforts to cure, loss of time, and elements of a kindred nature, are to be considered. The pain in this case was not shown to be very severe, for, on the day of the injury, she rode nine miles in a spring wagon, without any support to her back, and the next day rode two miles on horseback. It is true she complained on this occasion and she was, doubtless, a sufferer from the injury." It appears from the opinion that the injury relied upon by plaintiff to justify the recovery was *prolapsus uteri*, which, it was claimed, was caused by the fall, the foundation of the action. But the court say: "We do not think the evidence establishes this as the consequence of the fall." But the court remarks that, even if it be admitted this disease was the result of plaintiff's injury, it was not shown to be incurable; "on the contrary, the inference from the testimony of her mother is irresistible, that it is curable * * * ." "It may occasion annoyance for some time and prevent her enjoying rides on horseback, or engaging in hard work requiring an upright position." In this case the injury was absolutely trifling, certainly so as to its effects and very moderate as to pain and suffering. She rode nine miles in a spring wagon on the day of her injury and two miles on horseback the next day. No permanent injury, or disability lasting for even a day, was shown. The pain immediately after the injury, when it was certainly more severe, did not prevent her performing the ordinary duties of girls of her age, for if she could ride nine miles in a wagon and two miles on horseback

she could do ordinary "housework." The court, under these circumstances, held that the verdict upon its face bore evidence of partiality and prejudice, and for that reason ordered a new trial.

In *Chicago* v. *Langlass et ux.*, 52 Ill. 256, the judgment was set aside on the ground that the court concluded the jury allowed exemplary damages. The verdict was for $4,750, and the court held it was not a case in which vindictive damages could be allowed. The following extract from the opinion gives both the facts and the law of the case as found and ruled by the court: "We, after a careful examination of the evidence, are not prepared to say that Mrs. Langlass (the party sustaining the injury) is permanently disabled, or if so, to any considerable extent. She must have suffered much pain from erysipelas, and, perhaps, from nervous derangement consequent upon the fall, and if occasioned by the negligence of the officers of the city in grading and improving the streets, then she should be permitted to recover reasonable compensation, sufficient to cover all expenses attending her sickness, and for loss of time and for pain from the injury and any permanent injury."

In *Chicago* v. *Martin*, 49 Ill. 241, cited in the foregoing majority opinion, it is ruled that vindictive or exemplary damages will only be allowed when gross fraud, malice or oppression appear, and that in cases for mere negligence of a municipal corporation in failing to keep its streets in repair, such damages cannot be recovered. The case has no application whatever to the point under consideration.

In my judgment there cannot arise even a suspicion upon the record in this case that the verdict was the result of passion or prejudice, or that it was any thing else than the result of the honest, calm and intelligent exercise of judgment by the jury. The jury had before them a woman in the prime of life, who before had lived in ac-

Collins v. The City of Council Bluffs.

tivity and usefulness, rendered, by the injuries, a helpless cripple for life, a burden to herself and friends. The evidence showed that she had endured months of the most intense and fearful suffering, and the remainder of her life would be made up of pain and sorrow on account of these injuries. Now, is there a living man or woman that would, as a compensation for such injuries, accept ten times the amount of the verdict? No one possessing reason would do so. Under these circumstances my brothers say that the verdict is excessive. By what rule do they measure it? They do not pretend that as mere compensation it is too great; but that, in their opinion, a less sum would be in accordance with justice. Now, whose judgment upon this question is most likely to be correct, my brothers' or the jury's? The jury had all the evidence before them. We do not. They saw the plaintiff and were better able to determine the extent of her injuries than we are, taking the evidence as it appears in the record and without having the plaintiff before us. Again, are my brothers' notions about abstract justice and the precise measure of damages that will be equitable between the parties, any more reliable or likely to be more correct than those of the jury? I know of no reason why they should be.

Another fact, which under the rules of the law the jury were authorized to consider, may be referred to here. The bad condition of the street producing the injuries suffered by plaintiff, resulted from the gross neglect of the city. The obstruction had been upon the street for days, if not weeks. Many citizens had fallen there; in fact, it is shown that a city officer had fallen upon the ice. So great was the obstruction that those passing along had to avoid the spot by crossing the street.

The conflicting views of this court, as expressed in these opinions, is a conclusive argument establishing the utter unfitness of judges to determine the question of fact as to

the true amount which should be awarded plaintiff as compensation for her injuries. I think the amount of the verdict, $15,000, is not too great. MILLER and DAY, JJ., think $10,000 is the exact sum she ought to recover, while COLE, J., is equally assured that the precise measure of justice to plaintiff is found in $5,000. After this exhibition of the uncertainties in attaining justice by the judgment of a court, judges should cease to reflect upon the capacities and intentions of jurors, and should be humbly silent in view of compromise verdicts and of verdicts that do not exactly accord in amount with their ideas of right. They should be led to doubt whether the inherent difficulties attending the act of computing the precise sum which shall be compensation for personal injuries, can be overcome by judges, and to conclude that the duty can be better performed by a jury to whom it is intrusted by the law. I am constrained to believe that in the opinion of courts and of the profession, not to say of all intelligent men, the unanimous verdict of the jury in this case will command more respect and be regarded as a nearer approximation to justice than the divided and conflicting opinion of this court as to the measure of plaintiff's damage.

I may refer to facts, not wholly appearing in this record, to further illustrate the error of my brothers' conclusions.

The case was tried before Justice DAY, who, at the time, occupied the bench of the third district. He states that the jury sitting in the case was of unusual intelligence, and composed of the best men of the county. The defense made no serious resistance to the amount of recovery, in fact rather left it to be inferred by court and jury that if plaintiff recovered at all the amount claimed by her would not be unreasonable. That the jury discharged their duty honestly, intelligently and well, cannot be doubted. That they were as capable of determining the just and legal compensation to which plaintiff is entitled as this court is,

no one will deny. But this court sets aside the legally rendered verdict upon the ground of its want of justice. Its conclusion is not warranted by facts and in my opinion is contrary to law. And for this reason I dissent therefrom.

Reversed.