## ROSE v. THE DES MOINES VALLEY R. Co.

1. **Railroads:** NEGLIGENCE: SPECIAL CONTRACT. A railroad company or other common carrier cannot, by notice or special contract, restrict, limit or avoid its common law liability for negligence.

2. ———: ———: ———. Under Code, Sec. 1307, railroad companies are liable for *all* damages caused by the negligence of their agents or employes, and no special contract will exempt them from such liability. The provisions of the statute are general, applying equally to passengers and servants of the companies.

3. ———: ———: GRATUITOUS CARRIAGE. The payment of fare is not necessary to create the relation of common carrier and passenger. A railroad company was *held* to be liable for causing the death of a passenger by the negligence of its employes, notwithstanding he was at the time riding upon a free pass, upon which was a stipulation, signed by himself, releasing the company from all liability for injury to his person or property while using the same.

4. **Damages:** MEASURE OF: EXCESSIVE VERDICT. In an action against a railroad company by an administrator to recover for injury to the estate of his intestate, whose death was caused by the negligence of the company's employes, the measure of damages is the amount which will compensate the estate for the pecuniary loss sustained by the death of the deceased.

5. ————: ————: RULE APPLIED. Where it appeared that the deceased was twenty-four years of age, without family, of temperate and industrious habits, and whose annual net earnings were found to be $263, a verdict of ten thousand dollars was *held* to be excessive, and the judgment was affirmed upon the condition of a *remittitur* of five thousand dollars. BECK, J., *dissenting*.

*Appeal from Mahaska District Court.*

WEDNESDAY, SEPTEMBER 23.

THIS is an action for damages for the alleged killing of C. O. Rose by the negligence of the employes of the defendant while the said C. O. Rose was riding as a passenger on a train of cars on the defendant's railroad. The cause was tried to a jury, who rendered a verdict for $10,000.00 for the plaintiff, upon which the court rendered judgment. Defendant appeals.

*Seevers & Cutts* and *John Fyffe*, for appellant.

*Brown, Willys & Williams*, for appellee.

MILLER, CH. J.—I. The defendant, in its answer to plaintiff's petition, pleads: *first*, a denial of the alleged negligence on part of its employes; *second*, that the injury to plaintiff's intestate was caused by his own negligence; and *third*, the following special defense: " That previous to the 29th day of August, 1870, the Governor of this State invited the officers and soldiers of the State to meet and have a general re-union, at the city of Des Moines, from said day until the 5th day of September following, which re-union was approved by the General Assembly by an act, approved April 12th, 1870, being Chapter 99 of the Laws of the Thirteenth General Assembly.

" And defendant, for the purpose of aiding and advancing said object, undertook and agreed to furnish all such transportation for such officers and soldiers, that the rolling stock

belonging to defendant, and the state and condition of its railway, would permit or justify them in doing or attempting, without any pay or compensation whatever. To effectuate this object, passes were issued by the Adjutant-General of the State for distribution to such officers and soldiers, one of which was given to deceased, and was in substance as follows:

"'Des Moines Valley Railroad strictly subject to the conditions on the other side hereof, and all claims for loss and damage being assumed by C. O. Rose, who was a member of Co. B. 2d Iowa cavalry in the war for the suppression of the rebellion, he will be passed free over the Des Moines Valley Railroad and return.      JOHN GIVIN, *Supt.*

"'N. B. BAKER, *Adjutant-General of Iowa.*

"'This pass is not good unless signed by the holder on the back thereof, and is not transferable. If presented by any other person, conductor will take up and collect fare.'

"On the other side of said pass, and forming a part thereof, is the following:

.""Iowa Soldiers' Reunion.

"'In consideration of being passed free over the Des Moines Valley Railroad to attend Iowa Soldiers' Reunion at Des Moines, Aug. 29th to Sept. 5th, 1870, I, C. O. Rose, hereby assume all risk of accident, and expressly agree that the said Des Moines Valley Railroad Company shall not be liable, under any circumstances, for any injury to my person, or for any loss or damage to my property, which may occur to me while using this free pass as a passenger on any of the trains of said company; and that, as for me, I will not consider the said Des Moines Valley Railroad Company as common carriers or liable to me as such. And I further promise on honor to use this free pass only in going to and returning from said Iowa Soldiers' Re-union.      C. O. ROSE.'

"That said C. O. Rose at the time stated in paragraph three of petition, under and by virtue of said pass only, took passage on the defendant's train at Grand Junction for Des Moines; that said C. O. Rose paid no consideration whatever for said

passage, nor was any consideration whatever given defendant for transporting said Rose."

On motion of the plaintiff this defense was stricken out, and the court refused to allow the defendant to give any evidence thereunder on the trial. Of these rulings appellant complains, and presents for decision the question as to the power of the defendant as a common carrier to limit, by special contract, its common law liability for injuries caused to a passenger through the negligence of the employes of the railroad company.

This question has been frequently the subject of judicial investigation and decision both in England and America, and 1. RAILROADS: negligence: special contract. it cannot be said that the decisions thereon are entirely harmonious. The weight of American authority is that a common carrier cannot by notice or special contract restrict, limit or avoid its common law liability for negligence. The following cases support this doctrine: *N. J. Steam Nav. Co. v. Merchants' Bank*, 6 How., 344; *Phil. & Read. R. Co. v. Derby*, 14 Ib., 483; *Steamboat New World v. King*, 16 Ibid, 469; *Hall v. Cheney*, 36 N. H., 26; *Jones v. Voorhees*, 10 Ohio, 145; *Graham & Co. v. Davis*, 4 Ohio St., 362; *Cole v. Goodwin*, 19 Wend., 281; *Clark v. Faxton*, 21 Wend., 153; *Camden & Amboy R. Co. v. Burke*, 13 Wend., 611; *Dorr v. N. J. Steam Nav. Co.*, 4 Sand., 136; *Parsons v. Monteath*, 13 Barb., 353; *Stoddard v. L. I. Railw.*, 5 Sand., 180; *Fish v. Chapman*, 2 Kelly, 349; *Dwight v. Brewster*, 1 Pick., 50; *Far. & Mech. Bk. v. Champlain Transf. Co.*, 23 Vt., 186; *Sager v. Portsmouth R. Co.*, 31 Maine, 228; *Camden & Amboy R. Co. v. Bauldau*, 16 Pa. St., 67; *Bingham v. Rogers*, 6 Watts & Serg., 495; *Laing v. Colden*, 8 Penn. St., 479; *Penn. R. Co. v. McCloskey*, 23 Penn. St., 526, 532; see also, 2 Redfield on Railways, §§ 10 and 11, 160, 161, p. 82, and cases cited in notes.

The same doctrine has been recognized and applied by this court to telegraph companies in *Sweetland v. The Ill. & Miss. Tel. Co.*, 27 Iowa, 433, and in *Manville v. The Western Union Tel. Co.*, 37 Iowa, 214. And in a recent case in the Supreme Court of the United States, (*N. Y. Cent. R. R.*

*Co. v. Lockwood,* 5 Legal Gazette, 413,) the question of the power of a common carrier to limit his liability by a special contract was presented. Mr. Justice BRADLEY delivered an elaborate and exhaustive opinion, concurred in by all the judges, reaching the following conclusions: "1. That a common carrier cannot lawfully stipulate for exemption from responsibility, when such exemption is not just and reasonable in the eye of the law. 2. That it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants. 3. That these rules apply both to common carriers of goods and common carriers of passengers, and with especial force to the latter. 4. That they apply to the case of a drover travelling on a stock train to look after his cattle, and having a free pass for that purpose."

II. In addition to the weight of judicial authority, we have in this State the following legislative enactments, viz: 2. ——: —— : ——. "Every railroad company shall be liable for all damages sustained by any person, including employes of the company, in consequence of any neglect of the agents, or by any mismanagement of the engineers, or other employes of the corporation, to any person sustaining such damage, all contracts to the contrary notwithstanding." (See Sec. 7, of Ch. 169, Laws of 1862; Sec. 1, Ch. 121, Laws of 1870; and see Code, § 1307.)

Under this provision of the statute railroad companies are liable, notwithstanding any contract to the contrary, for all damages caused by the negligence of any of their agents or employes in the conduct or operation of their railroads. They cannot make a contract that will exempt them from liability for negligence.

Appellant urges that the history of the above enactment shows that, by section 7, of the act of 1862, it was merely intended to place the employes of railroad companies on the same basis, in respect to the right to recover from the company for injuries, as persons who are not employes of the company, and that the amendment to that section, passed in 1870, was intended to protect such employes from the effect

of contracts exacted by the railroad companies employing them, by which the benefits of the act of 1862 were waived.

The language of the statute is too broad and general to justify an application so limited. We cannot, merely from the history of the enactment, infer that the General Assembly intended the enactment to apply only to a particular class of persons, when there is nothing in the language used to indicate such an intention. The language of the enactment includes all classes of persons, sustaining damage from the negligence of the employes of the railroad company. The railroad company is, by the words of the statute, made "liable for all damages sustained by *any person*, including employes," caused by the negligence of its servants, "*all contracts* to the contrary notwithstanding." "All contracts," limiting or exempting the company from liability, are alike declared nugatory for that purpose.

In the construction of a statute the intention of the legislature is to be sought after but courts will not, for this purpose, adopt a construction which is repugnant to the clear meaning of the language used. *Leoni v. Taylor*, 20 Mich., 148; *District Township of Dubuque v. City of Dubuque*, 7 Iowa, 262, and cases cited. The language of the statutes under consideration plainly and clearly include passengers as well as employes on the road, and the limited construction contended for by appellant would be repugnant to such language. We must, therefore, interpret the statutes according to the plain and ordinary meaning of the language made use of, unless there is something in the spirit and reason of the enactments which requires a more restricted interpretation. We are unable to see or find any reason for restricting the application of the statutes on the subject to employes alone. Why they should not apply to passengers, also, no good reason can be given. On the other hand it would seem unreasonable to hold that under the broad general language of the statute, a common carrier is not prohibited thereby from making with its passengers and shippers, valid contracts of indemnity from the duties and responsibilities devolving upon them by law, and that at the same time such contracts between the carrier

and its employes, are declared of no validity. Upon well settled rules of interpretation, as well as upon principles of reason and justice, the passenger, equally with the employe, is, under these provisions of the statute, entitled to the protection they afford.

·If, hovever, there could be any doubt about this, it is settled by another statutory provision, as follows: "That in the transportation of persons or property by any railroad company, or by any person or firm engaged in the business of transporting persons or property, no contract, receipt, rule or regulation shall exempt such railroad, or other company, person or firm, from the full liabilities of a common carrier, which, in the absence of any contract, receipt, rule or regulation would exist with respect to such persons or property." See Sec. 1, Ch. 113,Laws of 1866. This provision of the statute stood unrepealed when the injury in this case occurred, and when this action was brought, and has been incorporated into the Code as Sec. 1308.

Its language applies expressly to passengers and shippers, to all persons and property transported by railroad carriage.

III. ' A distinction is sometimes taken between *simple* negligence and *gross* negligence. Whether there is any such distinction as respects railway passengers, it is unnecessary in this case to determine, since the jury have found specially that the plaintiff's intestate was killed through the *gross* negligence of the defendant's employes in charge of the train.

Upon this question of fact, under the conflicting state of the evidence, we cannot interfere.

IV. It is insisted by counsel for appellant, that, as the deceased was riding in defendant's cars on a free pass, at the 3.——:——: time of the injury which resulted in his death, gratuitous · carriage. therefore the relation of common carrier and passenger did not exist, and consequently the liabilities of a common carrier did not attach. In other words, that the payment of fare was essential to create the relation of common carrier and passenger, and that, as the deceased was traveling free on defendant's cars, the latter is not liable for the injury caused by the negligence of its employes.

In *Philadelphia & Reading Railway Co. v. Derby*, 14 How., 483, it was held that where the plaintiff was lawfully on the cars at the time of a collision, caused by the gross negligence of one of the servants of the railroad company, then and there employed on the road, he was entitled to recover for an injury resulting to him from such collision, notwithstanding the circumstances that the plaintiff was a stockholder in the company, riding by invitation of the president, *paying no fare*, and not in the usual passenger car. The court, in the opinion, per GRIER, J., say that, "the liability of the defendants below for the negligent and injurious act of their servant, is not necessarily founded on any contract or privity between the parties, nor affected by any relation social or otherwise which they bore to each other. It is true, a traveler by stage coach, or other public conveyance, who is injured by the negligence of the driver, has an action against the owner, founded on his contract to carry him safely. But the maxim of "*respondeat-superior*," which, by legal imputation, makes the master liable for the acts of his servant, is wholly irrespective of contract, express or implied, or any other relation between the injured party and the master. If one be lawfully on the street or highway, and another's servant carelessly drives a stage or carriage against him, and injures his property or person, it is no answer to an action against the master for such injury, either that the plaintiff was riding for pleasure, or that he was a stockholder in the road, or that he had not paid his toll, or that he was a guest of the defendant." And again the court say, that the duty to carry safely "does not result alone from the consideration paid for the service. It is imposed by the law even where the service is gratuitous. 'The confidence induced by the undertaking any service for another, is a sufficient legal consideration to create a duty in the performance of it,'" citing *Coggs v. Bernard*, and cases cited in 1 Smith's L. Cases, 95.

Upon these views it was held that if the plaintiff was lawfully on the defendant's railroad cars at the time of the injury, the plaintiff's right to recover would not be defeated by the facts, that he was the guest of the president of the road, paying no

fare, etc. In *The Steamboat New World v. King*, 16 How., 469, 474, the same doctrine is re-affirmed. It is also maintained in *The Pennsylvania Railroad Co. v. Henderson*, 51 Penn. St., 315, in a very elaborate opinion by MR. JUSTICE READ, in which the cases bearing upon the question are ably reviewed. See also *Beckman v. Shouse*, 5 Rawle, 179; *Goldey's Case*, 6 Casey, 30 Pa. St., 242; *Powell v. The Pennsylvania Railroad Co.* 8 Casey, 32 Pa. St., 414; *The Same v. McCloskey's Administrator*, 11 Harris, 23 Pa. St., 532; *Camden & Amboy Railroad Co. v. Bauldauf, supra*.

On the other hand some of the later cases in New York hold a contrary doctrine. They are *Wells v. N. Y. Cent. R. R. Co.*, 24 N. Y., 181; *Perkins v. Same*, Id., 196; *Bissell v. Same*, 25 Id., 442. These decisions were made by a bare majority of the Court of Appeals, the dissenting judges being Chief Justice DENIO and Justices WRIGHT and SUTHERLAND— three of the four permanent members of the court, whose dissenting opinions seem to us to be entitled to the most weight. These cases were reviewed and condemned in *Penn. R. R. Co. v. Henderson, supra*, and also in the recent case of *New York Cent. R. R. Co. v. Lockwood, supra*, which see.

In our opinion the better doctrine is that announced in *Phil. & Read. R. R. Co. v. Derby, supra*, and the cases in accord therewith. Besides, and independently of the adjudicated cases, upon the broad and unqualified provisions of our statutes, heretofore set out, we are of opinion that a common carrier by railroad, who undertakes to carry persons or property, whether gratuitously or for the usual or other charges or compensation, is liable for injuries sustained in consequence of the negligence of its employes engaged in the work of operating the road. The language of the statute is so broad that it includes *any* and all persons, employes as well as others, who may be injured in consequence of the negligence of the agents or servants of the railroad company, or persons operating the same.

V. It is next insisted that the damages awarded by the jury are excessive. The verdict is for the sum of $10,000. By the evidence it appears that the deceased was an unmar-

ried man of twenty-four years of age, by occupation a harness maker, and that his expectancy of life was 38 39-100 years. It was also proved that he was a man of temperate and industrious habits, and that his net earnings at the time of his decease were $263.11 annually. This last fact was found specially by the jury. The action is brought by the administrator for the injury to the estate of the deceased sustained in his death; there is therefore no basis for damages for pain and suffering, or for the grief of his relatives; compensation for the pecuniary loss to his estate is alone to be allowed. *Donaldson v. The M. & M. R. R. Co.*, 18 Iowa, 280, 290. See also case cited in note 2, on p. 646, of Sedwick on Damages, 5th ed.

In cases like this the true question always is, what sum of money will compensate the estate of the deceased for the loss 4. DAMAGES: sustained thereto by his death. The expectancy
excessive
verdict. of life being a little over thirty-eight years, and his net income being $263.11 per year, if he had lived for this time, and continued to earn the same income during the whole time, his estate, it is supposed, would have received the benefit of these earnings and their accumulations.

One-half of the sum awarded, viz: five thousand dollars, at six per cent. interest, would produce annually a net income greater than that earned by the deceased, and at ten per centum would produce annually nearly double the sum that he would annually earn during the expectancy of life, which, added to the principal sum, would bring to the estate at the end of that time a sum almost double that of the earnings of the deceased had he lived. No one would think of loaning money in Iowa, at less than ten per centum per annum, for it readily brings that rate of interest by the year, and is lawful.

In estimating the damages the jury should consider the exact situation, annual earnings, health, habits, etc., of the deceased; *Chi., R. I. & P. R. R. Co. v. Morris et al, Adm'rs,* *etc.*, 26 Ill., 400; and give full compensation for the pecuniary loss resulting to his estate from the killing. It is true that the precise loss may not be capable of exact computation, for although the deceased may have been in good health, of good

habits, and enjoying a net income as the fruits of industry and frugality, these things might not have continued during the whole, or any considerable portion of the expected term of his life.   On the other hand, a continuance of health, good habits, industry and frugality, together with fortuitous circumstances, might have enabled him to largely increase his income from year to year throughout the entire term of the expected life, accumulating great wealth, and at his death leave a very large estate.

These, however, are mere speculations, and are not to be made the basis upon which to compute the damages in cases of this kind.   And while, as before remarked, no exact rule can be laid down by which the precise sum of money lost to the estate of the deceased may be computed, yet an approximate amount can be ascertained from the probabilities created by all the surrounding circumstances, and hence the law will not leave the amount to the uncontrolled discretion of the jury. While much is left to their sound discretion, yet they are not authorized to found their verdict upon mere speculation. *The Pennsylvania Railroad Company v. Vandever*, 36 Penn. St., 298.   When, therefore, it is manifest that the jury have gone grossly beyond the rule of compensation, their verdict ought not to be allowed to stand, and it becomes the imperative duty of the court to arrest the excess. *Collins v. City of Council Bluffs*, 35 Iowa, 432.   As we have already said, full compensation should be made, not for the life destroyed, *for no sum of money however great would be sufficient for that purpose*, and it is not upon this basis that the damages are estimated, but compensation for the pecuniary loss to the estate is the remedy the law gives.   The sum we have named will, as we have seen, produce annually nearly double the net earnings of the deceased and seems to us to be a very liberal compensation under the evidence and circumstances of the case.   We do not say that this sum is the exact sum which will make the estate of the deceased good for the loss sustained thereto in his death.   On the other hand, we believe this sum to be even more than enough to compensate for the injury; that since the amount can be reached only approximately, upon the proba-

bilities of the case, drawn from all the evidence and circumstances, we name this sum as the largest that can be awarded under the well settled rules of law applicable to the case.

It being clear to us that the damages awarded by the jury are so excessive as to make it apparent that they were given 5. ———: ———: "under the influence of passion or prejudice," the rule applied. judgment must be reversed, unless the plaintiff will remit the excess over five thousand dollars. If the appellee will so remit, the judgment will, at his costs in this court, be

AFFIRMED.

BECK, J., *dissenting*.—I cannot concur in that part of the foregoing opinion which holds that the damages allowed by the jury are excessive, for two reasons:

1. I do not think the amount of the verdict indicates that the jury were influenced by passion or prejudice in reaching the conclusion as to the amount of damages. Nothing short of this will authorize us to interfere with the judgment of the court below.

2. The law has imposed upon the jury the duty of assessing damages, and not upon this court. We exceed our authority when we attempt, as is done in the foregoing opinion, indirectly to do so.

My views upon this subject are fully expressed in the two opinions prepared by me in *Collins v. The City of Council Bluffs*, 32 Iowa, 324, 35 Iowa, 432, the first annnouncing the opinion of the court, the second dissenting from the order requiring the plaintiff to remit a part of the judgment. I esteem it unnecessary to repeat them here.