## Chicago & Erie Railroad Company, Chicago & Eastern Illinois Railroad Company, Chicago & Western Indiana Railroad Company v. Henry H. Meech.

1. DAMAGES—*Elements of—Earnings.*—In an action for damages resulting from personal injuries, where the sole point of inquiry is, how much has the earning capacity of the plaintiff been decreased by reason of the injury, it is competent to show what his business (that of a painter) was worth for the year preceding the injury and what it was after.

2. RAILROADS—*Leasing Roads—Joint Liability for Injuries.*—Where one railroad company furnishes a track for other railroad companies to run their cars upon, it is responsible for the negligence of all of them.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Heard in this court at the March term, 1895. Affirmed. Opinion filed June 3, 1895.

FRANK O. LOWDEN, attorney for The Chicago & Eastern Illinois Railroad Company; WILL H. LYFORD and JOSEPH B. MANN, of counsel. OSBORN & LYNDE, attorneys for The Chicago & Western Indiana Railroad Company. W. O. JOHNSON, attorney for The Chicago & Erie Railroad Company, appellants.

EDGAR TERHUNE, attorney for appellee.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.

This is an action for personal injury against three railroads.

Meech was a passenger in a car of the Chicago and Eastern Illinois, which was behind time, and on the time of the Chicago and Erie, both running upon the track of the Chicago and Western Indiana.

The Chicago and Erie ran into the Chicago and Eastern Illinois, and one of the results was that the appellee was, as we think the evidence very satisfactorily proves, very severely injured.

Whether the Chicago and Eastern Illinois took proper precautions not to be in the way of the Chicago and Erie, or being in the way, adopted proper means of warning the Chicago and Erie, and whether the Chicago and Erie neglected sufficient warning that the Chicago and Eastern Illinois was in the way, were questions of fact upon which we regard the verdict as final. That the Chicago and Western Indiana, furnishing a track for the others to run cars upon, is responsible for the negligence of both or either of the others, is established law in this State. Pennsylvania Co. v. Ellett, 132 Ill. 654.

The record is a large one, and the skill and industry of counsel have made many questions upon it. But one of them all do we regard as serious, which, as it must often arise, we will consider.

To show fairly how the question is presented we extract from the brief of the appellants as follows:

" The plaintiff was permitted to testify as follows:

C. & E. R. R. Co. v. Meech.

Q. I will ask you to state how much you have made in your occupation as a painter, without regard to any contracts—special contracts, since the accident?

Objected to by each of the defendants; objection overruled by the court; exception by each of the defendants.

A. I have not made a living. I have not been able to live by the amount of work I could do.

Mr. Mann: I move that that answer be stricken out.

Motion sustained by the court.

Q. Will you please answer the question, if you can, approximately? A. Well, I might say that I have not earned $2.50 a week.

Q. I do not care what you might say. I want to know what you can say. State approximately, the best you can, how much you have made since the accident, without regard to any special contracts you have had.

Objected to by each of the defendants.

The Court: It may be understood that while there is a repetition, there will be the same objection, the same ruling and same exception. Answer the question, and answer it as precisely as possible, so that we can get along.

A. Two dollars would be in excess of what I have earned.

Q. Have you been able to earn that amount all the time since the accident? A. No, sir.

Q. I will ask you to state as nearly as you can how much you have earned as a painter, without regard to any special contracts, since the 13th day of January, 1893—the total amount.

Same objection by each of the defendants; objection overruled by the court; exception by each of said defendants.

A. One hundred dollars would cover it.

Q. I will ask you to state how much you made as a painter, without regard to any special contracts, for, say a year, anterior to the 13th day of January, 1893.

Objected to by each of said defendants; objection overruled by the court; to which ruling of the court each of said defendants excepted.

A. I can approximate the amount; I can't give the exact amount—$3,000.

The plaintiff had testified that he was a contracting painter at the time of the accident; that it was his mode of business to apply to the proper person for a contract of painting, and to employ people to do the work. The declaration in the case contained the usual averment as to damages, but no allegation of special damages. The sole inquiry, therefore, upon this point was, how much his earning capacity had been decreased by reason of the accident. It was not competent to prove what his business was worth for the year preceding the accident and what it was after the accident. Income from business depends upon a number of other factors, quite as important as the condition of one's health. Whether or not times were better before the accident than after, whether or not building was being done more extensively before the accident than afterward, whether or not he was able to secure more efficient employes before than afterward, are all questions affecting equally with the plaintiff's health his income from his business before and after he was injured."

Cases against railroads, and municipal corporations, for personal injuries inflicted, tried and appealed while the Supreme Court reviewed the facts, are numerous. In Illinois Central v. Welch, 52 Ill. 183, $10,000 was held to be too much damages for the loss of an arm, because Welch earned but $40 per month.

In Illinois Central v. Weldon, same vol. 290, $5,000 was too much for the death of " a common laboring man, but at what wages there was no proof." In City of Decatur v. Fisher, 53 Ill. 407, $3,000 too much for *prolapsus* by a servant girl of twenty years, upon the threefold presumption that she was a virgin, the injury curable, and that she probably earned $100 per annum. City of Chicago v. Elzeman, 71 Ill. 131, Illinois Central v. Ebert, 74 Ill. 399, and City of Aurora v. Hillman, 90 Ill. 61, are all cases in which the earnings of the plaintiff before the injury were taken into account by the Supreme Court in deciding the respective

cases. If earnings are to be considered, is there any sense in proving the amount, and excluding the mode or source?

City of Bloomington v. Chamberlain, 104 Ill. 268, rather blindly seems to hold that the rate of wages which had been earned as a teacher, was admissible to give the jury some idea of the wages of school teaching.

Says the brief, "The sole inquiry, therefore, upon this point was, how much his earning capacity had been decreased by reason of the accident." How, with the great army of salaried men and women, is that to be ascertained? How with lawyers—doctors?

The earning capacity of a railroad president and of a brakeman, might be decreased in the same percentage by a concussion of the brain, but how can the percentage of an unknown quantity be ascertained?

We have not overlooked Wabash Western Ry. v. Friedman, 146 Ill. 583, but that is not a case parallel to this. No special engagement was here proved.

On the whole case, there is no error for which the judgment ought to be reversed. If in strictness some refused instructions ought to have been given, they were only such as related to the damages, which are not beyond reasonable compensation.

The judgment is affirmed.