## COOPER, ADM'R, v. MILLS COUNTY.

1. **Counties**: DEFECTIVE BRIDGES: LIABILITY; STARE DECISIS. That counties are liable for injuries sustained by reason of defects in county bridges was held in *Wilson v. Jefferson Co.*, 13 Iowa, 181, and that decision has been invariably followed by this court ever since, and the rule cannot now be called in question in this state.

2. **Statute of Limitations**: AMENDMENT AFTER EXPIRATION OF LIMITATION. Where an action has been begun within the time limited by statute, an amendment may be filed after the time limited, setting up additional damages arising out of the original cause of action, and such damages may be recovered, if proved,

Cooper, Adm'r, v. Mills County.

3. **Evidence:** ADMISSION: ERROR WITHOUT PREJUDICE. The admission of evidence to prove what is abundantly obvious without proof cannot be prejudicial to any one, especially where the jury is so instructed as to preclude the possibility of their being misled thereby.

4. ———: EXPERT TESTIMONY: ADMISSIBILITY. A bridge-builder is not by virtue of his business qualified to testify as an expert as to the effect which a given log, in a given place, would have in changing the current of a stream.

5. **County:** BRIDGES: DILIGENCE REQUIRED. Counties are required to exercise such care in regard to the safety of their bridges as reasonably prudent and careful men would use in the conduct and management of their own affairs of like importance.

6. ———: ———: CARE IN BUILDING. If, without the use of certain appliances, a county bridge is defective in its construction, and not ordinarily well built, then the county must use such appliances.

7. **Verdict:** SPECIAL FINDING: MISUNDERSTANDING OF INSTRUCTION. The court instructed the jury, in substance, that if the bridge in question was properly built, though from a plan in the builder's head, such plan would be sufficient. Some or all of the jurors seem to have regarded the instruction as an interrogatory, and some one wrote directly under it, "Not sufficient." *Held* that these words could not be regarded as a special verdict, and that the irregularity was not sufficient ground for setting aside the general verdict.

8. **Constitutional Law:** SPECIAL LEGISLATION. The act of the Twentieth General Assembly, providing for holding terms of the circuit court of Pottawattamie county at Avoca, is not in conflict with § 30, art. 3, of the Constitution, which prohibits the passage of local or special laws in certain cases.

9. **Verdict:** EVIDENCE TO SUPPORT: NEGLIGENCE. The evidence in this case *held* to have justified the submission of the question of defendant's negligence to the jury, whose determination of it cannot be interfered with by this court.

10. **Practice on Appeal:** EXCESSIVE JUDGMENT ON VERDICT: AFFIRMANCE UPON REMISSION OF PART. The judgment upon a verdict for plaintiff in this case for a personal injury was for $25,000. This amount appearing to this court to be excessive, plaintiff is allowed sixty days to elect to accept judgment in this court for $15,000, and, in case of his refusal so to do, the judgment to be reversed. BECK, J., *dissenting*, on the ground that such order is not within the province of the court.

*Appeal from Pottawattamie Circuit Court.*

TUESDAY, JUNE 22.

THIS action was brought by Elizabeth Cooper to recover for a personal injury alleged to have been sustained by her by reason of the negligence of the defendant in the erection and maintenance of a county bridge. There was a trial to a jury, and verdict and judgment were rendered in her favor for $25,000. The defendant appealed. The plaintiff died, and the present plaintiff, W. R. Cooper, was substituted as administrator of her estate.

*Watkins, Williams & Wright* and *Lewis & Young*, for appellant.

*John Y. Stone* and *Frank Shinn*, for appellee.

ADAMS, CH. J.—On the fourth day of July, 1882, the plaintiff's intestate, Mrs. Elizabeth Cooper, attempted to cross the bridge in question in a wagon drawn by two horses, and in which wagon, besides herself, were one Lowe, acting as driver, and five children, from two to thirteen or fourteen years of age. While thus attempting to cross the bridge it fell, and the plaintiff's intestate received severe and permanent injuries. The wagon was an ordinary two-horse lumber wagon. Another wagon, with four adults in it, and six children, had crossed in safety a moment before. The plaintiff contends that the bridge fell by reason of being defective. The defendant contends that it fell by reason of an unexpected wash-out, producing a land-slide just at the moment of the plaintiff's intestate's attempted passage.

I. The defendant's first position is that counties are not liable for injuries sustained by reason of defects in county bridges. It is not denied that this court held

1. COUNTIES: defective bridges: liability: stare decisis.

otherwise in 1862, in *Wilson v. Jefferson Co.*, 13 Iowa, 181, and that decision has been invariably followed since that time. But the defendant insists that these decisions are in conflict with the adjudications elsewhere, and ought to be overruled. But we have to say that

every authority cited has been adduced before; and that, whatever we might think of the question as an original one, the law in this state must be regarded as definitely settled. The defendant's position cannot be sustained.

II. The plaintiff at first claimed only $20,000 as damages. Afterwards, to-wit, August 28, 1884, an amended petition was filed in which were claimed $35,000 damages. It is insisted that the plaintiff's claim for all above the original amount claimed is barred by the statute of limitations. Actions for tort must be brought within two years from the time the cause of action accrued. This action was brought within that time. The claim of $35,000 is predicated upon the same cause of action for which the action was brought. The action not being barred, the plaintiff, if entitled to recover at all, is, we think, entitled to recover all the damages sustained, within the amount claimed in her petition and amended petition.

2. STATUTE of limitations: amendment after expiration of limitation.

III. One of the plaintiff's theories was that the piling was not driven deep enough; and that the piles were pressed out by the weight of the horses and wagon, and persons in the wagon. In pursuance of this theory, the plaintiff's counsel asked one Robbins, a witness, a question in these words: "Mr. Robbins, as an experienced bridge-builder, I will ask you if these piling ought not to have been driven down so deeply and firmly into that blue clay that it would have been impossible for the weight of a load of persons and wagon and horses above to have pressed them out into the stream?" This question was objected to by the defendant, but its objection was overruled. It seems to us that no evidence was necessary upon such a point. It was abundantly obvious that the piling should have been driven so deep that it could not be pressed out by any ordinary use of the bridge. Every one knows that a bridge should be so built that it will not be broken down by ordinary use. The defendant could not have been prejudiced by proof of such a fact, even if the evidence objected to were

3. EVIDENCE: admission: error without prejudice.

to be regarded as inadmissible. We do not say that a failure to drive the piling deep enough, if there was such failure, was necessarily negligence. The evidence shows that the piling was driven down many feet. Those who built the bridge might have acted with reasonable skill and care, even though they failed to drive the piling as deep as it should have been driven. But the jury was instructed in regard to the measure of care which should have been exercised, and they could not, we think, have been misled by the evidence in question. What we have said above is applicable, we think, to other expert evidence objected to.

IV. The defendant introduced as an expert witness a bridge-builder, and asked his opinion as to what effect a log

4. ——: expert testimony: admissibility.

floating down as drift-wood, and caught on a bent of the bridge, had in changing the current, and causing a washout. The court excluded the question, and the defendant assigns the ruling as error. That a bridge-builder has occasion to study the currents of streams to some extent seems probable, but we do not see how his professional knowledge would enable him to judge better than others as to the effect which a given log, in a given place, would have in changing the current of a stream. We think the evidence was rightly excluded.

V. The court instructed the jury that the defendant was bound to exercise such care "as reasonably prudent and care-

5. COUNTY: bridges: diligence required.

ful men would use in the conduct and management of their own affairs of like importance." The giving of this instruction is assigned as error. The defendant insists that the degree of care required of a county is the very lowest known, and cites *Soper v. Henry Co.*, 26 Iowa, 264. But, in our opinion, the case cited does not support the defendant's position. The reason for charging the county with the exercise of any care in such matters is that the safety of the traveling public requires it. Travelers upon a highway have not the time, means or skill to make a proper inspection of county bridges. They should

be allowed to assume that the requisite care has been exercised by the county officers. Now, it appears to us that requisite care is not less than prudent men may be expected to exercise in their own affairs. We do not think that the safety of the traveling public can be secured with less.

VI. The defendant complains of the modification of an instruction asked. The instruction is in these words: "Unless you find that splices bolted to the piles and posts of the bents are a part of ordinarily good and prudent county-bridge work, the defendant was under no obligation to put on such splices." This instruction the court changed by adding: "unless you find from the evidence that, on account of the failure to put on such splices, the bridge was defective in its construction, and not ordinarily well built. But, if you do so find, it was the duty of the defendant to have put on such splices." We are not able to see that the words added make any essential change; but, if they do, it must be because the instruction asked set up, as the standard of care, such care as is in fact ordinarily exercised, which might be less than the care which ought to be exercised.

*6. ——: ——: care in building.*

VII. The court, at request of defendant, instructed the jury, in substance, that if the bridge was properly built, though from a plan in the builder's head, such plan would be sufficient. Some or all of the jury seem to have concluded that the instruction was intended as an interrogatory. This appears from what some one wrote on a paper which was pinned upon the paper upon which the instruction was written. Besides, there was written, directly underneath the instruction, the words, "Not sufficient," which the defendant claims was a special finding in contravention of the instruction. But we do not think that we can go outside of the special and general verdicts, regularly rendered, for the purpose of penetrating the counsels of the jury-room. The words relied upon to impeach the verdict, by showing a misunderstanding of an instruction,

*7. VERDICT: special finding: misunderstanding of instruction.*

could have no more force than the affidavit of one or more jurors showing that they misunderstood an instruction; and it would not be claimed that such affidavit would be admissible. Nor can we take the words "not sufficient" as having the force of a special verdict, because no special verdict was called for on such point, and they must be taken as the words merely of the juror who wrote them. We do not think that the verdict can be set aside, as the defendant claims, by reason of this irregularity.

VIII. This action was tried at Avoca, in Pottawattamie county. It is insisted by the defendant that the court had no jurisdiction to try cases elsewhere than at Council Bluffs, the county seat. It is not denied that the Twentieth General Assembly passed an act providing for holding terms of the circuit court at Avoca; but it is said that the act is unconstitutional, in that it is in conflict with section 30, article 3, of the constitution, which provides that the General Assembly shall not pass local or special laws in certain cases; and it is insisted that the act in question is a local law, and comes within the prohibition. The constitution, after enumerating certain cases in which local or special laws shall not be passed, provides that the prohibition shall apply in all other cases where a general law can be made applicable and of uniform operation throughout the state. It seems manifest to us that the act in question does not come within the prohibition. A particular place was to be designated, and other provisions made as incident to holding terms at that place.

8. CONSTITU-TIONAL law: special legis-lation.

IX. It is contended that the verdict is not supported by the evidence; but, in our opinion, so far as the question of the county's negligence is concerned, it is. We are aware that it is possible that there may have been no negligence; and, perhaps, if we could accept all the ingenious theories and explanations of the defendant's counsel, we should say that the facts relied upon do not show negligence. We cannot set out the evidence,

9. VERDICT: evidence to support: neg-ligence.

and undertake to meet all the theories and explanations of counsel. It is sufficient to say that we have all reached the conclusion that the evidence justified the submission of the question of negligence to the jury, and we cannot go behind their finding on that point.

X. It is contended that the verdict is excessive; and in this we think that the defendant's position must be sustained. The amount allowed must have been almost wholly for physical and mental suffering; and while the evidence shows that to be great, and the question was in the discretion of the jury, if properly exercised, we cannot divest ourselves of the impression that the verdict is a very extraordinary one, and greater than the facts of the case justified. While it is the province of the jury to assess the damages, it is equally our province to set aside a verdict if it is so large as to afford good ground for believing that it was the result of passion or prejudice, and remand the case for trial by another jury. This we feel called upon to do in this case. This has been done in several cases, and the practice is too well settled to admit of any question. Usually, however, this court has not made an absolute order remanding the case for another trial, but has allowed the plaintiff to elect whether he will take another trial, or accept a certain amount, to-wit, an amount designated by the court as the largest amount which would not seem to the court to be open to the objection of being excessive. In accordance with this practice, we have concluded to say that if the plaintiff shall elect, within sixty days from the filing of this opinion, to accept a judgment for $15,000, and interest thereon at six per cent from date of judgment below, he may take such judgment in this court, otherwise the case must be remanded, and the judgment stand simply

REVERSED.

*Margin note: 10. PRACTICE on appeal: excessive judgment on verdict: affirmance upon remission of part.*

BECK, J., *dissenting.*—I cannot concur in the conclusion

of the majority of the court announced in the tenth point of the foregoing opinion. The identical questions of law involved in this point arose in *Collins v. City of Council Bluffs*, 35 Iowa, 432. The facts in this case are very like those of that; and the conclusions reached in both are based upon the same grounds. What I said in my dissenting opinion in that case is applicable to this. I still entertain the views of the law expressed therein, and now have no doubt of their correctness. For the reasons stated in that opinion, I dissent in this case. I concur in the foregoing majority opinion upon all points in the case save the tenth.