FRED CAHOW, JR., v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

**Injuries to Servant:** EXPERT TESTIMONY. Where one employed as a helper in defendant's shops, together with another, was moving a locomotive tender by means of pinch bars, and, on plaintiff's companion withdrawing his bar from under a wheel of the tender it started backward and ran over plaintiff. In an action for the injuries, the question whether two men were sufficient to move the tender with safety was not a subject for expert testimony, and the admission of such testimony was prejudicial error.

**CONDITION OF TOOLS KEPT BY DEFENDANT:** *Evidence.* Where plaintiff, together with another, was moving a locomotive tender

by means of pinch bars, and, on plaintiff's companion with-drawing his bar from under a wheel of the tender, plaintiff attempted to hold the tender by means of his bar, but it started back and ran over him, in an action for the injuries, it was permissible for plaintiff to show the general condition of the bars kept at the shop at that time; plaintiff having been ordered to select a bar from among a number.

**Assuming Risk of Employment:** INSTRUCTIONS.   In   an   action for the injuries, it was contended defendant was negligent in not furnishing pinch bars and a sufficient number of persons to move the tender, and the court charged that it was the duty of plaintiff to exercise care to acquaint himself with the work, and the appliances, grounds. and tracks whereon he was re-qpired to work, and that it was proper to consider the length of time he had been in defendant's employ, and his intelligence and experience.  *Held*, that the charge was not erroneous, as applying· to properly constructed grounds, etc.; there being no claim of negligence, except as to that to which the testimony might apply.

**Stating Issues:**   HARMLESS ERROR.  Where four charges of negligence were alleged in the petition, but two were eliminated from the case, that the court, in stating the issues to the jury, included the four charges of negligence, was not prejudicial error, the jury being subsequently instructed that the only charges to be considered were those which had not been eliminated.

*Appeal from Guthie District Court.*—HON. J. H. APPLE-GATE, Judge.

THURSDAY, JANUARY 31 1901.

ACTION to recover damages for personal injuries sus-tained while in the defendant's employment, caused by ·cer-tain alleged acts of negligence on the part of defendant, and · without fault or negligence on the part of the plaintiff.   The defendant answered, denying generally, and verdict and judg-ment for $7,085 were rendered in favor of the plaintiff.   De-fendant appeals.—*Reversed.*

*Carroll Wright, John W. Foster* and *Robert Mather* for :appellant.

*F. O. Hinkson* and *Carr & Parker,* for appellee.
VOL 113 Ia—15

GIVEN, C. J.—I.   A consideration of the questions pre-
sented requires that we notice the material facts as shown by
the evidence.   There is but little conflict in the evidence as
to material facts, and they are substantially as follows:  In
November, 1897, the plaintiff, then about 22 years of age,
was employed by the defendant as a "helper" at its shops in
Valley Junction; his work being to do whatever he was di-
rected to do.   In 1894 he had worked as a helper in the de-
fendant's shops at Stuart, his duties being mostly in running
a drilling press and in the tool room.   Just previous to his
employment at Valley Junction he had worked on a gravel
train on another road for about three weeks.   Nothing was
said at the time of his employment as to his experience as a
helper.   Defendant had at its shops a transfer table moved
by steam power, by which cars, engines, and tenders run
upon the table could be moved along and transferred to such
other tracks connecting with the table as was desired.
In transferring, the vehicle was removed from the
table onto the track desired by the use of pinch bars
in the hands of the workmen.   These bars are strong, heavy,
iron bars, like an ordinary crowbar, excepting that the lower
end is square and beveled from one side so as to form an edge
instead of a point.   In moving the vehicles the pinch bars
are placed on the rail back of and under the wheels, and by
bearing down on the bars, and repeating the motion as the
vehicle moves, it is propelled forward.   On the third day
after plaintiff's employment he was ordered to go and help
Mr. Wood to put a detached locomotive tender, containing
five tons of coal and some water, from the table onto a cer-
tain spur track.   Though plaintiff had never done that kind
of work he knew how it was done, and, upon being ordered
to do it, inquired where he would find a bar, and, being told
where the bars were, went and got one from a number in the
corner of the shop.   The table, with the tender thereon, was
moved to the track upon which it was desired to set the ten-

der; and, upon trying the bar he had brought, plaintiff found that it did not work well, whereupon, by direction of Mr. Wood, he went back to the shop and picked out another. He Mr. Wood, with their pinch bars, moved the tender east off the table onto the spur track to the point where it was intended to be left; Mr. Wood working at the south and the plaintiff at the north rail, and astride of the rail. When they got the tender off the table, Wood said to plaintiff: "We will block it up, and you hold it until I block it. I said all right." Thereupon Wood dropped his bar and went around the tender to block it, and just then plaintiff's bar swung around, striking him on the left leg, throwing him down with his right leg on the rail, and the tender started back and ran upon and so injured the plaintiff's right leg that amputation below the knee became necessary. This spur track inclined slightly down towards the transfer table. Plaintiff says both bars that he got were dull, and that the second was the best one he could find.

II.   We first notice defendant's complaints as to certain rulings in the taking of the evidence. Of the four charges of negligence made against the defendant, only the charge that defendant was negligent in not furnishing sufficient help to move the tender, and negligent in not furnishing suitable pinch bars, were submitted to the jury; the other charges of negligence being eliminated from the case. On the trial Mr. Carroll, called by the plaintiff, having testified to a knowledge of the place of this accident, and experience in moving cars, etc., with pinch bars, was asked as follows: "Now, suppose the tender of the engine, the same as that one you saw that evening Mr. Wood and Mr. Cahow were at—about five tons of coal in it; how many men would be necessary to safely remove that tender with pinch bars from the transfer onto the spur track, taking into consideration the weight of the load and tender, and transfer and spur track as you knew them?" The defendant objected upon several grounds, one which was that it is

not a question of expert testimony or for the opinion of the witness. The objections were overruled, and the witness answered: "If the tank had five tons of coal on, as you say, I think it would take four men to pinch it nicely—pinch it along." He was then asked: "How many would you say would be required, under these circumstances, to do the work safely." To this he answered: "Four men, I think, to pinch it along safely." Similar questions were put to one Baker, a helper of some experience, and he was permitted to answer over defendant's objections, that it would take four men. Defendant complains of these rulings upon two grounds, namely, that the number required to safely od the work sheds no light on the question of defendant's negligence, and that the number required is not a subject for expert testimony. "Another duty which the master owes the servant is that of employing sufficient help to do the work, so far as may be necessary to enable them to do it with safety." Shearman & Redfield Negligence, section 193. This does not mean safety from the risks of the employment which the employe assumes, but risks resulting from negligence of the employer. It was as much the duty of the defendant to furnish the necessary help as it was to furnish suitable tools to do the work in safety from hazards resulting from neglect of that duty. Whether the defendant was negligent in not furnishing more held is an important question in this case, upon which the plaintiff holds the affirmative, and this evidence was introduced in support thereof. As said in *Muldowney v. Railway Co.*, 36 Iowa, 462: "It is often very difficult to determine in regard to what particular matters and points witnesses may give testimony by way of opinion. It is doubtful whether all the cases can be harmonized or brought within any general rule or principle." In *Belair v. Railway Co.*, 43 Iowa, 667, the rule is stated as follows: "The difference between proving what is the usual way of doing an act and proving that a particular way is sufficient or

insufficient, prudent or imprudent, is quite apparent. The former proof is directed to a fact; the latter to a mere opinion. It is only when the fact to be established partakes so far of the nature of a science as to require the course of previous habit or study to the attainment of the knowledge of it that the opinion of experts can be received. If the relation of facts and their probable results can be determined without special skill or study, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury." In *Muldowney v. Railway Co., supra,* the rule is stated thus: "That the opinion of witnesses possessing peculiar skill is admissible whenever the subject matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it without such assistance—in other words, when it so far partakes of the nature of a science as to require a course of previous habit or study in order to the attainment of a knowledge of it; and that the opinion of witnesses cannot be received when the inquiry is into a subject matter the nature of which is not such as to require any peculiar habits or study in order to qualify a man to understand it." These witnesses were permitted, over defendant's objections, to give their opinions as to the number of men necessary to do the work safely. There is no dispute but that the two men did safely move the tender onto the spur track to the place where it was intended to leave it, and that, upon Wood's withdrawing his bar so as to block the wheels, plaintiff's bar was thrown out of place, the tank moved back and the plaintiff injured. The questions are whether this resulted from a defective condition of the bar that the plaintiff was using or from the want of more help, or from both causes combined. These are questions which the jury was just as capable of forming an opinion upon from the evidence before it as were the witnesses from their experience. It required neither special skill nor study to determine whether more help was necessary to accomplish this work. See, also, *Allen v. Railway Co.,* 57 Iowa, 623. Plain-

tiff cites *Bells v. Railway Co.,* 92 Iowa, 346, wherein a wit-
ness of long experience in shipping horses by rail, and famil-
iar with their habits while being shipped, was asked whether
the bars in a particular car, of which he had personal knowl-
edge, were safe: The court said: "But the character of the
car that will meet the requirements for shipping stock is to
be known from experience or observation as to what will meet
the test. To reach such a conclusion one should have knowl-
edge of the usual habits of stock when confined in cars, and
what kind of car could and could not have proven sufficient
for such purposes." The inquiry seems to have been not as
to the form of the question, but whether the subject was one
for expert testimony, and the court held that it was. Many
cases are cited wherein expert testimony has been admitted
and wherein it has been rejected, but none of them is so iden-
tical with this in the facts as to be controlling. We think the
jury was just as capable of determining whether more help
should have been furnished as were the witnesses, and that it
was not a subject for expert testimony. The plaintiff insists
that the admission of this testimony, though erroneous, was
without prejudice, and contends that, under the evidence
aside from this, the jury must have found for the plaintiff.
It was for the jury alone to determine whether the defendant
was negligent in not furnishing more help. We cannot say
that by presenting these witnesses as peculiarly qualified
to give an opinion on this question, and in calling out their
opinions, the defendant was not prejudiced. For aught that
we can know, it may have been these very opinions that led
the jury to find as it did.

III. Plaintiff was permitted to show, over defendant's
objection, what the general condition of the pinch bars kept
at the shop was, about the time that the plaintiff was injured.
as to being dull or otherwise. Defendant says, "Evi-
dence that one is habitually careless is not admissible
for the purposes of proving his lack of care at a defi-
nite time." This evidence is as to "at or about the time

plaintiff received his injury," and, as the plaintiff was ordered to select from a number of bars in the shop, there was no error in admitting this evidence.

IV.    In stating the issues to the jury, the court included the four charges of negligence alleged in the petition, and also included all of them in stating in the instructions what the charges of negligence were, and instructed that the questions for the jury to determine were "whether the defendant or its employes were negligent in either of the particulars complained of, and submitted to you herein."    Following this, the court instructed that the only charges of negligence to be considered were as to the pinch bars and the number of helpers required. Appellant contends that thus referring to the charges of negligence not submitted to the jury was confusing and prejudicial.    Surely there was no occasion to refer to the charges of negligence that were not submitted to the jury, but, as they were explicitly instructed as to the two charges which they were to consider, we think no prejudice resulted.

V.    Defendant complains of the thirteenth instruction "because it tells the jury that it is the duty of the plaintiff to exercise reasonable care and diligence to acquaint himself with the work he is required to perform, and with the tools and appliances, the grounds and places where he is required to work, and that, in determining whether he exercises such care, it was proper to take into consideration the length of time he had been in the employ of the defendant, his age and intelligence, previous experience, and knowledge of the kind of work, tools, appliances, and grounds."    It is conceded that this is correct as applied to defects in the tools, appliances, grounds, and tracks.    It is claimed that it does not apply to machinery, appliances, surrounding grounds, rails, and tracks which were properly constructed.    There is no claim of negligence except as to that to which it is said the testimony might apply.

VI.    Appellant contends that the verdict arrived at is a quotient verdict.    A number, if not all, of the jurors were

examined on this subject, and their testimony shows that the verdict was not reached in the manner in which verdicts should be arrived at; but, as, for the reasons already stated, the judgment must be reversed, and as this alleged error may not occur upon a retrial, it is unnecessary that we notice the matter further. The same is true of the defendant's contention that the verdict is not sustained by the evidence. In view of the retrial, it would not be proper that we should express an opinion upon the evidence. It follows from the conclusions announced that the judgment of the district must be REVERSED.