CLARKE WILLIAMS, Appellee, v. CLARKE COUNTY, Appellant.

**County bridges:** PERSONAL INJURY: PROXIMATE CAUSE. In this action for injury to plaintiff, who, while attempting to rescue his horse which had caught its foot in a hole in a county bridge, was thrown over the banister of the bridge and injured, it is held that his injury thus received was the proximate result of the defective bridge.

**Same:** EXTENT OF INJURY: WHEN A QUESTION OF FACT. Where experts disagree as to the nature of plaintiff's suffering and the character of his injuries the question of extent of the injuries becomes one for the jury.

*Appeal from Union District Court.*—HON. H. M. TOWNER, Judge.

TUESDAY, OCTOBER 25, 1910.

ACTION at law to recover damages for personal injuries received by plaintiff due to a defective county bridge. De-

fendant denied the allegations of the petition and pleaded contributory negligence on the part of plaintiff. On the issues joined the case was tried to a jury, resulting in a verdict for the sum of $14,500. On defendant's motion for a new trial this was reduced to $12,000, and both parties appeal. Defendant will be called appellant. *Affirmed.*

*Lloyd Thurston* and *Maxwell & Maxwell,* for appellant.

*M. L. Temple, W. S. Hedrick,* and *V. R. McGinnis,* for appellee.

DEEMER, C. J.—This is the second appearance of the case in this court. The opinion on the first appeal will be found in 143 Iowa, 328, to which reference is made for a statement of the facts. The verdict on the first trial was for $15,000. On the second trial the jury made answer to some special interrogatories, which are shown by the following excerpt from the record:

(1) Did J. W. Drennen, a member of the defendant's board of supervisors, in December, 1905, inspect and examine the bridge at which plaintiff was afterward injured? Answer: Yes, he did at that time.

(2) If you answer the above question in the affirmative, did said Drennen make such inspection and examination in a reasonably careful manner? Answer: Yes.

(3) As a result of such inspection and examination, if you answer the said Drennen made one, did he direct that said bridge be repaired with respect to one cap and the flooring? Answer: Yes.

(4) Was said bridge afterwards, and during the spring and summer of 1906, repaired as respects one cap and the flooring by Mr. Squire, Mr. Booth, and Mr. Collier, workmen in the employ of the county? Answer: Not in full according to the instructions.

(5) Did said Drennen, as a member of defendant's board of supervisors, in July, 1906, after the bridge had

been repaired with respect to the cap and flooring, inspect and examine said bridge? Answer: He did partially.

(.6) If you have answered the last question in the affirmative, did said Drennen make such inspection and examination in a reasonable and careful manner? Answer: No.

(7) Did plaintiff voluntarily get out of the wagon and go into the space between the mare whose foot had broken in. through the plank and the east banister of the bridge? Answer: No.

(8) Was plaintiff, while near the east side and banister of the bridge, struck in or on the breast by the struggling mare, and thus knocked or thrown over the banister of the bridge to the ground below? Answer: Yes.

Defendant relies upon the following propositions for a reversal of the judgment: (1) That the 'verdict is without support in the testimony. (2) That the answers to special interrogatories Nos. 4, 5, and 6 are contrary to the evidence and unsupported thereby. (3) That verdict as modified by the court and the judgment as rendered are excessive. (4) That the defect in the bridge was not the proximate cause of plaintiff's injury.

The first three of these propositions are questions of fact, and the last presents a question of law. We shall first dispose of the question of law. The manner of the accident is sufficiently shown by the answers

1. COUNTY BRIDGES: personal injury: proximate cause.

to 7 and 8 of the special interrogatories, which answers are not complained of. From these it appears that plaintiff's horse got its foot caught in a hole in the bridge, which for the purpose of this decision we must assume was due to the negligence of the defendant; that plaintiff got out of his wagon and attempted to rescue his horse, passing between the horse and the banister on the bridge, and while in that position was struck in the breast and knocked or thrown over the banister to the ground below, receiving the injuries of

which he complains. Were these injuries the proximate result of the defect in the bridge? To that interrogatory there can be but one answer, in view of the findings made by the jury. It is hardly necessary to cite authority on so plain a proposition, but see *Burk v. Creamery Co.,* 126 Iowa, 730; *Phinney v. Ill. Central,* 122 Iowa, 488; *Langhammer v. City,* 99 Iowa, 295; *Gould v. Schermer,* 101 Iowa, 582; *Harvey v. Clarinda,* 111 Iowa, 528; *Osborn v. Van Dyke,* 113 Iowa, 557; *Rice v. Whitley,* 115 Iowa, 748.

II. On the former appeal we held that there was sufficient evidence of defendant's negligence to take the case to a jury. There was no such change in the testimony on the second trial as to justify another conclusion. Indeed, the opinion on the former appeal made the law of the case, and must now be followed upon this proposition. It is not for us to say what verdict should have been returned on the evidence as a whole. Our inquiry is confined to the proposition: Was there enough testimony to take the case to the jury on the question of defendant's negligence? That was heretofore determined on the first appeal. However, were it now an open question, we should arrive at the same conclusion.

III. The answers to the several interrogatories also have support in the testimony. We shall not quote from the record in support of this conclusion, as to do so would subserve no useful purpose.

IV. The extent of plaintiff's injuries was a matter of serious dispute. Experts disagreed as to the nature

2. SAME: extent of injury: when a question of fact.

of his suffering and the character of his wounds. This question was also for the jury, and the verdict returned indicates the view taken by it of the nature and extent of plaintiff's injuries.

Defendant suggests that plaintiff is suffering from

traumatic hysteria. This, however, is recognized by physicians as a disease of the nervous system from which recovery is by no means certain or speedy. So long as it exists, conditions remain as found, notwithstanding the mind has much to do with them. This whole matter in view of the conflicting testimony, was for the jury. We are quite sure that plaintiff is not simulating. Indeed, defendant's experts do not so claim. They say, however, that his trouble is hysterical. Even such a complaint is often most serious in its results.

Connected with this claim as to the extent of plaintiff's injuries is defendant's contention that the verdict as modified and the judgment as rendered are excessive. The verdict on the first trial was for $15,000, and on the second for $14,500, and the last was reduced to $12,000.' In view of the wide latitude given the jury by the testimony as to the character, extent, and permanence of plaintiff's injuries, together with the suffering, past, present, and future, we think the verdict as finally reduced should not be disturbed. Cases are of but little help upon such a proposition, but see *Collins v. City,* 35 Iowa, 432; *Cooper v. Mills County,* 69 Iowa, 350; *Pence v. Railroad Co.,* 79 Iowa, 389; *Huggard v. Refining Co.,* 132 Iowa, 724.

V. Plaintiff appeals from the order reducing the amount of his verdict. In view of the wide discretion lodged in the trial court in such matters, we are not justified in interfering with this reduction. Moreover, plaintiff consented to the reduction rather than to take a new trial, and he is in no position now to complain.

Plaintiff also filed a motion asking us to assess a penalty because this appeal is frivolous and without merit. This we are not disposed to do. The interest on the judgment for the time the appeal has been pending is no small amount, and in addition defendant must pay all the costs of the appeal. Counsel for defendant are

not given to taking frivolous appeals, and we have no reason to doubt their good faith in this case.    For these reasons the motion for a penalty will be, and it is, overruled.

No error appears, and the judgment is on both appeals *affirmed.*