E. F. ESCHER, Appellee, v. CARROLL COUNTY, IA., Appellant.

Counties: UNLIQUIDATED DEMANDS: PRESENTATION: ACTIONS. A board
of supervisors is entitled under the statute to a reasonable time
after the presentation of an unliquidated claim against the county,
in which to determine upon a disposition of the same before suit
is instituted thereon; and the question of whether the claim has
been presented to the supervisors and a reasonable time given to dispose
of it is for the jury. And a failure of the board to act is the
equivalent of a refusal to pay.

Same: The statute requires that an unliquidated demand against the
county shall be presented to the supervisors and payment demanded
as a condition precedent to suit; it need not, however, be marked
filed by the auditor, but if actually coming into his hands the statute
is complied with; and where it appeared that the claim was received
by the auditor, the question of whether it was received within a
reasonable time was properly submitted to the jury.

Same: ADDITIONAL CLAIM. An additional claim for damages may be
filed against the county and included in the prayer for relief.

Evidence: OPINION OF WITNESS. Where a witness had fully and
minutely detailed the result of his examination of a defective high-
way bridge, refusal to permit him to give his conclusion as to the
condition of the bridge was not prejudicial; besides the opinion
sought to be elicited covered the very question the jury was to de-
termine, and for that reason was inadmissible.

Highways: DEFECTIVE BRIDGES: LIABILITY OF COUNTY FOR INJURY:
INSTRUCTIONS. A county is not liable for injuries resulting from
a defective highway bridge, unless its defective condition was known
to the supervisors, or some member of the board, or should have
been known to them in time to have repaired the defects or taken
some other precaution for the public safety. Nor can one injured
as a result of its defective condition recover therefor, unless his
claim has been presented in time for the supervisors to investigate
and act thereon before suit is instituted.

Same: CONTRIBUTORY NEGLIGENCE. A traveler cannot recover for in-
juries received from the falling of a defective highway bridge,
if negligent in going upon the bridge and such negligence contrib-
uted to his injury.

**Same:** DUTY OF COUNTY. A county is only required to use ordinary and reasonable care to keep its bridges safe for travel.

**Same:** MEASURE OF DAMAGES. In an action for personal injury caused by a defective highway bridge plaintiff's damages cannot be measured solely by his ability to earn money by manual labor; but the instructions in this case on that subject are somewhat doubtful, and if intended to warn the jury against allowing anything for the full expectancy of life, because he might become enfeebled or unable to earn money in the future, might not be prejudicial, but in view of their uncertainty are held erroneous.

**Same:** DAMAGES: FUTURE PAIN AND SUFFERING: INSTRUCTIONS. Only such damages for future pain and suffering should be allowed in a personal injury action, as are shown by the evidence to be reasonably certain; the jury should not be instructed to allow such damages as the plaintiff ''may suffer in the future.''

**Same:** In view of the fact that there was evidence in this action that the supervisors were not negligent in failing to discover and repair the defective bridge in question, and that plaintiff's injuries were slight, the instructions allowing recovery for future pain and suffering, without requiring a finding that it was such as was reasonably certain to follow from the injury, was prejudicial.

*Appeal from Crawford District Court.*—HON. F. M. POWERS, Judge.

FRIDAY, APRIL 11, 1913.

ACTION at law to recover damages for injuries sustained by plaintiff in the fall of a defective bridge maintained by the defendant county. Trial to a jury. Verdict and judgment for plaintiff in the sum of $7,661.29, and defendant appeals. —*Reversed.*

*E. A. Wissler, Jacob Sims* and *Lee & Robb,* for appellant.

*Byers & Byers* and *Conner & Lally,* for appellee.

DEEMER, J.—The case has once been before this court, and the opinion on that appeal will be found in 146 Iowa, 738.

Plaintiff is a farmer living near Manning, in Carroll county, and on April 2, 1906, while driving over a county bridge in said county, the bridge gave way, causing the team which he was driving and the wagon in which he was riding to fall into the stream which the bridge spanned, resulting in damage to his property and injury to his person. On May 14th of the same year he caused a notice of his injury and of his intention to claim damages therefor to be served upon the defendant county, and in this notice stated that he would file a claim for damages. Within a few days thereafter he filed such claim, and therein asked the sum of $3,129, as damages to his person and property. No action having been taken by the county on this claim, he commenced a suit in November of the same year. On December 3d of the same year he mailed to the county auditor the following:

Before the Honorable Board of Supervisors of Carroll County, Iowa.

E. F. Escher, Claimant, v. Carroll County, Iowa. A Claim for Damages in Addition to a Claim Formerly Presented.

The claimant states: That on the 2d day of April, 1906, a bridge constructed and maintained by Carroll county, Iowa, across and over the Nishnabotny river, on the public highway and on the east side of the southeast quarter of section eight (8), Warren township, Carroll county, Iowa, broke and fell into said river while claimant was driving across and over the said bridge with his team and wagon, said wagon being at the time loaded with oats, that the breaking and falling of the said bridge was due to its old and rotten condition and was due to no fault of the claimant. The claimant was thrown into the said river by the falling of the bridge, and received severe and permanent injury to his head, right ear, limbs, and body; and that claimant's team was bruised and crippled and his wagon broken and said oats damaged and destroyed. That the claimant has been damaged by reason of the said falling of the said bridge as aforesaid in the sum of $6,871.00 in addition to the sum of $3,129.00 as formerly claimed, no part of which has been paid, as follows:

For additional medical expenses ................$   55.00
For injury to claimant, mental anxiety and suf-
    fering ....................................... 6,816.00
                                                   _____
                                                   $6,871.00

Wherefore E. F. Escher, claimant, asks that Carroll county, Iowa, pay him said amount, to wit: $6,871.00 in addition to $3,129.00 heretofore claimed, and hereby demands said amount of said Carroll county, Iowa.

                                        E. F. Escher, Claimant.

State of Iowa, Carroll County—ss.:

I, E. F. Escher, being first duly sworn, upon my oath depose and say that I am the claimant herein, that I have read over the above additional claim for damages, that I know the contents thereof, and that the same and the statements therein contained are true as I verily believe, and that said claim is wholly unpaid.                E. F. Escher.

Subscribed and sworn to before me and in my presence by the said E. F. Escher this —— day of ———, 1906.

                        Albert Puck, Notary Public.

This claim was not marked filed, nor was it presented to the board of supervisors, as we understand it. Instead of this, action having already been commenced, it was turned over to the county attorney. This claim is known in the record as "Exhibit M." It was either mislaid or lost, and was not returned to the auditor's office, and on February 2d plaintiff filed another claim known as "Exhibit E," which was identical with "Exhibit M," save that it was sworn to on February 2, 1907, before a notary public and marked filed on the same day by the county auditor. On February 5th of the same year plaintiff dismissed his action, and on February 6th of the same year he commenced this suit, and the next day filed an amended and substituted petition, upon which the case was tried.

The board of supervisors did nothing with any of plaintiff's claims, impliedly disallowing them and denying all

claim for relief. The amended petition asked judgment for damages to person and property in the aggregate sum of $25,000.

The charges of negligence were that the defendant county allowed the bridge to become out of repair and in a dangerous condition; that it knew, or should have known, of this dangerous condition; that it failed to make proper inspection of the bridge; and that, if it had done so, it would have known of the dangerous condition. Among other things defendant pleaded that the amended claim for $6,871 additional damages was not filed until February 2, 1907, and that it had no opportunity to act upon the same before plaintiff commenced his second suit; and that said additional claim was barred by the statute of limitations. It also denied all allegations of negligence, and further pleaded that all claims in excess of $10,000 were barred by statute.

I. The first point relied upon is that the trial court erred in submitting any claim in excess of $3,129, erred in its instructions with reference to the filing of the additional claim, and erred in holding that any additional claim was filed prior to February 2, 1907.

The last clause of section 3528 of the Code reads as follows: "But no action shall be brought against any county, on an unliquidated demand, until the same has been presented to such board and payment demanded and refused or neglected." In construing this section, it has been held that the board should be given a reasonable time in which to determine what disposition should be made of the claim, and that whether or not such time was given is a question for the jury. *Ross v. Hardin County*, 94 Iowa, 252. And it has also been held that no action on the part of the board is the equivalent of a refusal to pay. *Ferguson v. Davis Co.*, 57 Iowa, 601. Paragraph 1 of section 3447 of the Code reads as follows: "Actions may be brought within the times herein limited, respectively, after their causes accrue, and not after-

1. COUNTIES: unliquidated demands: presentation: actions.

wards, except when otherwise specially declared: 1. Those founded on injury to the person on account of defective roads, bridges, streets or sidewalks, within three months, unless written notice specifying the time, place and circumstances of the injury shall have been served upon the county or municipal corporation to be charged within sixty days from the happening of the injury.'' This last section, as we view it, is inapplicable to the case, for the reason that due notice of the claim was given within the time required by this statute, and that, if necessary to the support of the suit, it should be held that the second suit was a continuation of the first. *Ceprley v. Paton,* 120 Iowa, 559.

The real point made for appellant here is that the amended claim for damages was not filed until February 2d, and that the county board did not have time to examine into the merits of the claim before the action was commenced. With reference thereto, the trial court instructed as follows:

(11) The law provides that no action shall be brought against the county upon plaintiff's claim until the same has been presented to the board of supervisors and payment demanded, and same has been refused or neglected, and you are to determine from the evidence whether plaintiff's claim for $6,871 was presented to the board of supervisors and payment demanded a sufficient length of time before this action was commenced to enable the board of supervisors to act on same; and, if you find that sufficient time did not elapse between the presentation of the claim and the commencement of this action to permit the board of supervisors to investigate and act upon said claim, then you will not consider this part of plaintiff's claim further; but, if you find that the board of supervisors had sufficient time to investigate and act upon the claim before the commencement of this action, even though they did not act upon it, then you may consider this part of the claim and determine from the evidence whether or not plaintiff may recover upon it as here instructed.

(11½) It is admitted by the parties to this suit that Exhibit M, which is an additional claim for $6,871, was sent by mail to the county auditor of Carroll county, Iowa, and

was received by him about the 3d of December, 1906; that he handed the same to the county attorney without marking it filed; that afterwards Exhibit M could not be found in the auditor's office, and on February 2, 1907, Exhibit E, which is identical with Exhibit M, was presented and filed with the county auditor of Carroll county, and that this suit was commenced on February 6, 1907. In this connection you are instructed that Exhibits M and E are for the same additional claim, and in considering whether or not this additional claim for $6,871 was filed a sufficient length of time to enable the board to investigate and act upon it before the commencement of this action you should consider the claim as filed on the date Exhibit M was received by the county auditor.

The objection to this instruction is that the sending of the notice of the additional claim to the county auditor was

2. SAME.     not a presentation to the board, and not a filing of the same, as the law requires. It will be observed that the statute does not require that the paper be marked filed. The requirement is that it be presented to the board and payment demanded. Even if the statute required a filing, the auditor could not defeat the claim by neglecting or failing to mark it. As a rule, a paper may be filed by delivering it to the proper officer, to be kept on file, and it need not be marked or indorsed "filed." *Harrison v. Clifton,* 75 Iowa, 736; *Byington v. Moore,* 62 Iowa, 470; *Simmons v. Simmons,* 91 Iowa, 408; *Sheldon Bank v. Royce,* 84 Iowa, 288, and cases cited. Treating the claim as filed, when it was mailed to and received by the county auditor, who was the proper official to whom to present it, there was no error in submitting the question to the jury of whether or not it was filed within a reasonable time.

It is conceded that one may file a claim for additional

3. SAME: additional claim.     damages, and include such claim in his prayer for damages, and it has been so held by this court in *Cooper v. Mills Co.,* 69 Iowa, 350.

II. Plaintiff was permitted to prove by so-called experts, who gave their opinions upon hypothetical facts, over

defendant's objections, the life of timbers used in the bridge in question, and as to whether an inspector intent upon his duties would have discovered this condition. This testimony was afterwards withdrawn by plaintiff's counsel or at least the objectionable part of it was withdrawn, and no prejudice resulted to the defendant.

In this same connection defendant propounded to a member of the county board, who had served on the bridge committee, a question which had reference to an examination of the bridge in question in the latter part of March, 1906: "Q. Now from the examination that you made there of the bridge, and basing it upon your experience in the construction of bridges, and in superintending the building of bridges and examining the same, and your knowledge as obtained from the examination at that time, and from the examination of bridges generally, what would you say in your judgment as to whether the bridge at that time, just previous to the accident when you examined it, was a bridge that was reasonably safe?" Objection to this was sustained. The witness had already detailed fully and minutely the examination made by him of the bridge before it fell, and the results thereof; and conceding, arguendo, that the question might properly have been answered, no prejudice resulted from the ruling.

4. EVIDENCE: opinion of witness.

However, under previous rulings of this court, it would seem that the ruling was correct, for the question called for an answer to the very question which the jury was to determine, and a witness should not as a rule be permitted to thus prejudge and solve such an issue of fact. *Swanson v. Railroad Co.*, 116 Iowa, 304; *Marshall v. Hanby*, 115 Iowa, 318; *Cahow v. Railroad Co.*, 113 Iowa, 224; *Furlong v. Carraher*, 108 Iowa, 492; *Cooper v. Mills Co.*, 69 Iowa, 350.

Plaintiff was permitted to prove by the county auditor how claims were treated by him, and the board, and what records were made of the same. In this there was no error.

III. Many of the instructions are complained of, and

to such as are deemed important, we shall now refer. In the twelfth instruction the court said:

To entitle the plaintiff to recover, he must prove by a preponderance of the evidence: First. That at about the time alleged he was injured and damaged substantially as alleged by reason of the alleged defects in the bridge. Second. That the alleged injuries and damages were occasioned without any fault or negligence on his part. Third. That said injuries and damages were directly caused in consequence of the defendant negligently permitting the bridge to bo and remain in such condition as not to be reasonably safe for public travel thereon. Fourth. That the defendant county, or its board of supervisors, or some of the members thereof, had notice of the defective condition of the bridge prior to the accident, or that its defective condition existed such a length of time that the board in the exercise of ordinary diligence should have known it. Fifth. That he has been damaged thereby. Sixth. That the plaintiff's claims were presented to the board of supervisors and payment demanded, which was neglected or refused.

This instruction was erroneous, in that it fails to include some of the essential elements of plaintiff's case, viz.:

5. HIGHWAYS: defective bridges: liability of county for injury: instructions.

(1) That the condition of the bridge was known to the county board, or some of the members thereof, or should have been known by them, within such time before the accident that they might have repaired the defects or taken some other precaution by barricading it or otherwise safeguarding the public; (2) that the claim was presented within such time as to permit the board to investigate and act upon the same before the suit was commenced.

Again, in the twenty-second instruction, the court said:

If you find by a preponderance of the evidence that the bridge was unsafe, and the plaintiff was damaged in consequence thereof, and that he presented his claim to the board of supervisors for payment, and that payment was refused or neglected, then the county would be liable, provided you

also find that the board of supervisors of said county or any member thereof knew of its decayed and unsafe condition, or that by the exercise of ordinary care and watchfulness they would have known of its condition, and on this point you will bear in mind that it is incumbent upon the county, through its officers, the board of supervisors, to use due care and watchfulness in looking after, inspecting, and repairing its bridges on the public highways, in order that its bridges may be repaired and replaced when they become unsafe, to to the end that persons passing over them may be safe.

The errors in the twelfth are intensified here, and in addition, plaintiff might recover under this instruction, although his own negligence may have contributed to the injury. See *McCor-mick v. Railroad Co.,* 47 Iowa, 347; *Gamble v. Mullin,* 74 Iowa, 100.

6. SAME: contributory negligence.

Moreover, defendant was not required to keep its bridges safe. Its duty was performed if it kept them reasonably safe, or used ordinary and reasonable care in keeping them safe. Instructions 10 and 23 have reference to the damages which plaintiff might recover, and read as follows.

7. SAME: duty of county.

(10) The parties to this action have stipulated that the Carlisle Life Tables show the plaintiff's expectancy of life to be thirty years. This may be considered by you as evidence of such expectancy of life, but it is not conclusive upon the question of duration of life. The physical condition of the particular individual, his general health, his vocation with respect to risks and hazards, his habits, and all other facts bearing upon the question may be considered in connection with such life tables in determining the plaintiff's expectancy of life. Regard should also be had to the probable times during such expectancy of life that plaintiff might reasonably be expected to be capable of performing manual labor on account of his age. In determining plaintiff's earning capacity as a farmer, the possible or probable profits of such farming operations should not be considered.

(23) If, upon inquiry as directed, you find for the plain-

tiff, you will then proceed to determine the amount of damages you will allow him. He is entitled to recover, if at all, only what are called compensatory damages; that is, such a sum as will compensate him for the injuries sustained. In estimating such damages you will allow: First. Such sum as will compensate him for money expended for medical treatment of the injuries received, not to exceed $85, and for damages to his horses, not to exceed $35, damages to his wagon not to exceed $13.50, damages to his harness not to exceed $3.57, and damages to oats not to exceed $10.00. Second. The value of his time, if any, during the period that he has been disabled by the injuries. These elements are susceptible of being proven by direct evidence. Third. If you find that the injuries are permanent, or have impaired the plaintiff's power to work or earn money in the future, such sum as will compensate him for the loss of such power. Fourth. Such sum as will be reasonable to award him on account of the physical pain that he has suffered, or may suffer in the future, by reason of the injuries. These last two elements of damages are not susceptible of proof by direct evidence, and from necessity are left to the sound discretion of the jury, guided by the circumstances of the case as shown by the evidence. In this connection it may be said that it is the plaintiff's present loss that must be determined, not what may be his future loss. It would be improper to give him payment in advance for the total amount of his future wages or earnings, or a present allowance for his total future earning capacity. The present worth, rather than the aggregate amount of future damages, should be estimated; and the jury should endeavor to ascertain a present sum which would fairly and reasonably compensate the plaintiff for any future impairment of his earning capacity which would result as a consequence of the injury complained of, if you find such allowance justified by the evidence submitted.

We do not exactly understand the tenth instruction in its application to the facts here shown. Whether or not his capacity to perform manual labor on account of his age was to be considered in augmentation or in diminution of his damages we are not able to discover. If the phrase had reference only to

8. SAME: measure of damages.

the diminution of his power to earn merely from physical labor alone, and this was to be considered as enlarging his damages, the instruction, under our previous holdings, was wrong. *Laird v. Railroad Co.*, 100 Iowa, 336; *Trott v. Railroad Co.*, 115 Iowa, 80; *O'Conner v. Railroad Co.*, 144 Iowa, 289.

If, on the other hand, this was intended as a warning to the jury not to allow him anything for the full expectancy of life, because he might become enfeebled, or unable to perform manual labor, in the future, then the instruction was not, perhaps, prejudicially erroneous to the defendant. The last sentence of the instruction renders it doubtful as to what thought the court intended to convey.

The fourth paragraph of the twenty-third instruction has so many times been held erroneous by this court that we need only cite some of the cases so holding. *Fry v. Railroad Co.*, 45 Iowa, 417; *Ford v. City*, 106 Iowa, 96; *Hall v. Railroad Co.*, 115 Iowa, 19; *Williams v. Clark County*, 143 Iowa, 329. There is nothing in this instruction which saves it from the rule of these cases—no qualifying clause, and no neutralizing statement, as in some of the more recent cases.

9. Same: damages: future pain and suffering: instructions.

We might, perhaps, disregard some of these errors; but two patent facts appearing in the record do not seem to justify an effort to minimize the prejudicial character of the rulings. Defendant claimed that the bridge was properly inspected, and was in a reasonable state of repair down to a very short time before the accident, when it claimed that two heavy loads of sand were hauled over the bridge, driven in close proximity to each other, and that this brought about the condition of the bridge, which caused it to fall. It is also claimed that no one had knowledge of that fact until after the accident occurred, and the county officers were not negligent in discovering the trouble and rectifying it. We are not to be understood as holding that these facts were established. What we do say

10. Same.

is that enough testimony was taken upon this proposition to require a submission of the matter to a jury, and that the court did not do so in its instructions. Again, the defendant very seriously contended that plaintiffs' injuries were not severe in character or lasting in effect. Many experts were examined on this proposition on both sides of the cause, and as usual there was a sharp disagreement between them. The external injuries which plaintiff received were not marked, indeed, it was almost a miracle that plaintiff escaped without more serious external bodily injuries. It is claimed, on the one hand, that he suffered injuries to his nervous system and spinal cord which are of a lasting and permanent character, and on the other, that his injuries are neurotic and largely imaginery. Some of the defendant's experts went so far as to say that he was normal physically, that he would likely live out his full expectancy, and that there was nothing really the matter with him. In these circumstances the court should have instructed the jury not to allow anything for future pain or suffering, unless it was shown that such suffering was reasonably certain to follow.

For the errors pointed out, the judgment must be, and it is, *Reversed.*